# UNITED STATES DISTRICT COURT

## MIDDLE DISTRICT OF LOUISIANA

| | |
|---|---|
| **BROOK PLAISANCE, FREDRICK BASS, AMANDA COLEMAN, STEPHEN STRICK, AND WILLIAM GRIESHABER** on behalf of themselves and all others similarly situated,<br><br>*Plaintiffs*<br><br>**VERSUS**<br><br>**STATE OF LOUISIANA WORKFORCE COMMISSION; AVA DEJOIE, in her official capacity as Secretary of the Louisiana Workforce Commission; and JOHN BEL EDWARDS, in his official capacity as chief executive officer of the State of Louisiana,**<br><br>*Defendants* | **CIVIL ACTION NO.: 21:121-BAJ-EWD**<br><br><br>**JUDGE: BRIAN A. JACKSON**<br><br><br>**MAG.: ERIN WILDER-DOOMES** |

## DEFENDANTS' LOUISIANA WORKFORCE COMMISSION AND AVA DEJOIE'S MEMORANDUM IN OPPOSITION TO PLAINTIFFS' MOTION FOR PRELIMINARY INJUNCTION

ADAMS AND REESE LLP

William B. Gaudet (#1374)
Kellen J. Mathews (#31860)
ADAMS AND REESE LLP
Hancock Whitney Center
701 Poydras Street, Suite 4500
New Orleans, LA 70139
Telephone: (504) 585-0263
Fax: (504) 566-0210
William.Gaudet@arlaw.com
Kellen.Mathews@arlaw.com

***ATTORNEYS FOR STATE OF LOUISIANA WORKFORCE COMMISSION AND AVA DEJOIE***

# TABLE OF CONTENTS

TABLE OF CONTENTS ........................................................................................................ i

TABLE OF AUTHORITIES ........................................................................................... ii, iii

I.     INTRODUCTION ............................................................................................... 2

II.    SUMMARY OF THE ARGUMENT ................................................................. 2

III.   FACTUAL BACKGROUND .............................................................................. 4

       Unemployment Insurance, Generally ................................................................. 4
       The COVID-19 Pandemic and Corresponding Response ................................... 6
       The CARES Act and Pandemic-Related Unemployment Benefits Expand
       Unemployment ................................................................................................... 7
       The Volume of Claims and Benefits Paid is Unprecedented ............................. 9
       LWC Has Made Significant Efforts and Sacrifices to Increase its Claims Handling
       Capacity  .......................................................................................................... 10
       LWC is Charged with Maintaining Program Integrity and Combatting Fraud .... 10

IV.    LAW AND ARGUMENT ................................................................................. 11

       A. Burden of Proof on Preliminary Injunction ................................................ 11
       B. Plaintiffs Cannot Extablish a Substantial Likelihood of Success on the Merits ............ 12
       C. Plaintiffs Have No Irreparable Harm ......................................................... 16
       D. The Balancing of Hardship and Harm Weighs Strongly in Favor of LWC ................... 17
       E. Entry of an Injunction Would Result in a Disservice to the Public ............................. 19

V.     CONCLUSION ................................................................................................. 20

# TABLE OF AUTHORITIES

Page(s)

Cases

*Acquifer Guardians v. Federal Highway Administration,*
  779 F.Supp.2d 542 (W.D.Texas, San Antionio Div., 2011) .................................................. 19

*Allied Mktg. Grp., Inc. v. CDL Mktg., Inc.,*
  878 F.2d 806 (5th Cir. 1989) .................................................................................. 11

*Autumn Court Operating Co. LLC v. Healthcare Ventures of Ohio,*
  2021 WL 325887 ..................................................................................................... 13

*Bambury v. S. Univ.,*
  CV 16-00832-JJB-EWD, 2017 WL 3381360 (M.D. La. Aug. 4, 2017) ............................. 2, 3

*Brook Plaisance, et al. v. State of Louisiana, et al.,*
  CV 21-00121-BAJ-EWD, 2021 WL 1015879 (M.D. La. Mar. 16, 2021) ...................... 3,12,16

*Chaney v. Louisiana Work Force Comm'n,*
  560 Fed.Appx. 417 (5th Cir.2014) ............................................................................. 13

*Cozzo v. Tangipahoa Par. Council--President Gov't,*
  279 F.3d 273 (5th Cir.2002) ....................................................................................... 2

*Davis v. Peters,*
  CV 17-00795-BAJ-EWD, 2019 WL 1125649 (M.D. La. Mar. 12, 2019) ............................. 11

*Deerfield Med. Ctr. v. City of Deerfield Beach,*
  661 F.2d 328 (5th Cir. Unit B 1981) ........................................................................... 16

*Fletcher v. Louisiana Dep't of Transporation & Dev.,*
  CV 19-00593-BAJ-RLB, 2020 WL 6588593 (M.D. La. Nov. 10, 2020) ............................... 2

*Janvey v. Alguire,*
  647 F.3d 585 (5th Cir. 2011) ..................................................................................... 16

*Martinez v. Mathews,*
  544 F.2d 1233 (5th Cir. 1976) ............................................................................. 3, 5, 12

*Mathews v. Eldridge,*
  424 U.S. 319, 96 S.Ct. 893, 47 L.Ed.2d 18 (1976) ....................................................... 16

*Mississippi Power & Light Co. v. United Gas Pipe Line Co.,*
  760 F.2d 618 (5th Cir. 1985) ..................................................................................... 11

*Munaf v. Geren,*
  553 U.S. 674 (2008) ................................................................................................. 11

*Parks v. Dunlop,*
  517 F.2d 785 (5th Cir.1975) ................................................................................. 16, 17

*Paternostro v. Choice Hotel Interactive Services,*
  309 F.R.D. 397 (E.D. La. 2015) ................................................................................. 16

*Price v. Unifab Int'l, Inc.,*
  CIV.A. 05-1047, 2005 WL 2898236 (M.D. La. Oct. 31, 2005) ......................................... 13

*Professional Ass'n of College Educators v. El Paso County Community College District,*
  730 F.2d 258 (5th Cir. 1984) ..................................................................................... 12

*Radix Law PLC v. JPMORGAN Chase Bank,*
  2020 WL 8020120, (D. AZ. Dec. 21, 2020) ................................................................. 13

*Ridgely v. Fed. Emergency Mgmt. Agency,*
   512 F.3d 727 (5th Cir. 2008)...................................................................................... 11
*Roho, Inc. v. Marquis,*
   902 F.2d 356 (5th Cir. 1990)...................................................................................... 12
*Sandres v. Louisiana Workforce Comm'n,*
   CIV.A.09-652-C, 2010 WL 565378 (M.D. La. Feb. 17, 2010) .................................. 13
*Valdery v. Louisiana Workforce Comm'n,*
   CIV.A. 15-01547, 2015 WL 5307390 (E.D. La. Sept. 10, 2015) ............................... 13
*Walmart v. Dukes,*
   *564 US 338* (2011) .................................................................................................... 16
*Welch v. Thompson,*
   20 F.3d 636 (5th Cir.1994)......................................................................................... 15
*West Alabama Quality of Life Coalition v. United States Federal Highway Administration,* 302
   F., Supp. 2d, 302 F.Supp.2d 672 (S.D. Texas, Houston Div., 2009) ........................ 20
*Williams-Sonoma, Inc.,*
   947 F.3d 535 (9th Cir. 2020) ..................................................................................... 19

Statutes

La. R.S. 13:5106(A) .......................................................................................................... 3
La. R.S. 23:1471 ............................................................................................................. 14
La. R.S. 23:1600 ......................................................................................................... 5, 7
La. R.S. 23:1660 ............................................................................................................ 19
La. R.S. 23:1660(D)(1) .................................................................................................. 18
La. R.S. 44:4.1(B)(12) ................................................................................................... 18

Regulations

20 C.F.R. § 603.7 ........................................................................................................... 19

iii

# UNITED STATES DISTRICT COURT

## MIDDLE DISTRICT OF LOUISIANA

| | |
|---|---|
| **BROOK PLAISANCE, FREDRICK BASS, AMANDA COLEMAN, STEPHEN STRICK, AND WILLIAM GRIESHABER** on behalf of themselves and all others similarly situated,<br><br>*Plaintiffs*<br><br>**VERSUS**<br><br>**STATE OF LOUISIANA WORKFORCE COMMISSION; AVA DEJOIE, in her official capacity as Secretary of the Louisiana Workforce Commission; and JOHN BEL EDWARDS, in his official capacity as chief executive officer of the State of Louisiana,**<br><br>*Defendants* | **CIVIL ACTION NO.: 21:121-BAJ-EWD**<br><br><br>**JUDGE: BRIAN A. JACKSON**<br><br><br>**MAG.: ERIN WILDER-DOOMES** |

## DEFENDANTS' LOUISIANA WORKFORCE COMMISSION AND AVA DEJOIE'S MEMORANDUM IN OPPOSITION TO PLAINTIFFS' MOTION FOR PRELIMINARY INJUNCTION

**MAY IT PLEASE THE COURT:**

Defendants, Louisiana Workforce Commission ("LWC") and Ava Dejoie, in her official capacity as Secretary of the Louisiana Workforce Commission (the "Secretary") (collectively referenced hereinafter as "Defendants"), appearing for the limited purpose of opposing Plaintiffs' motion for preliminary injunction and without consenting to the jurisdiction of this court[1], respond to said motion, as follows:

---

[1] As this Court also noted in its March 16, 2021 Order denying Plaintiffs' temporary restraining order (TRO) (R.Doc. 13), Plaintiffs' suit has implicated "two interrelated jurisdictional issues—Eleventh Amendment sovereign immunity and what entities constitute suable "persons" under § 1983—which may affect the Court's ability to adjudicate the merits of this dispute." As discussed briefly below in the context of Plaintiffs' inability to establish a substantial likelihood of success on the merits, LWC will shortly be filing a motion similar to the motion to dismiss filed by the State, on the grounds that Sovereign Immunity exists for LWC and the Secretary.

## I.   INTRODUCTION

In 2020 LWC paid a total of $7 Billion in unemployment benefits.[2]  This figure is dozens of times greater than the $153 Million in benefits that LWC paid just the year before, in 2019.[3] In terms of claims handled, LWC received approximately 1,116,301 claims in 2020, which was a 975% increase over claims for the prior year, which totaled 103,785.[4] In addition to the influx in claims overall, LWC has seen an exponential uptick in fraudulent claims, and pursuant to directives by the DOL, has actively sought to combat these fraudulent claims and preserve program integrity.[5] Against this backdrop, the Plaintiffs in this matter have filed a putative class action seeking to compel LWC to essentially do more and to do it faster with no consideration of the realities LWC is facing. As set forth more fully herein, the instant motion for preliminary injunction is completely meritless and counterintuitive to the goal of processing and paying more claims. This motion should be denied, and in due course judgment rendered in favor of Defendants and against Plaintiffs.

## II.      SUMMARY OF THE ARGUMENT

At the outset, Defendants submit that any consideration of Plaintiffs' claims in this matter should be pretermitted since these claims are barred under the Eleventh Amendment. Courts have made it clear that "where a state agency is the named defendant, the Eleventh Amendment **bars suits** for both money damages and ***injunctive relief*** unless the state has waived its immunity. *Cozzo v. Tangipahoa Par. Council--President Gov't*, 279 F.3d 273, 280–81 (5th Cir.2002); *Fletcher v. Louisiana Dep't of Transporation & Dev.,* CV 19-00593-BAJ-RLB, 2020 WL 6588593, at *2

---

[2]  **Exhibit 1- Affidavit of M. Mabile** at ¶7.
[3]  *Id,*
[4]  *Id* at ¶ 5.
[5]  **Exhibit 2- Affidavit of R. Williams** at ¶35.

(M.D. La. Nov. 10, 2020); *Bambury v. S. Univ.*, CV 16-00832-JJB-EWD, 2017 WL 3381360, at *2 (M.D. La. Aug. 4, 2017). By statute, Louisiana has refused any such waiver of its Eleventh Amendment sovereign immunity regarding suits in federal courts. *See* La. R.S. 13:5106(A). *Id.* Further, the Secretary and LWC were not refusing to follow the federal regulations; indeed, on the contrary, any alleged wrongdoing (which Defendants deny) would be the result of adherence to the federal regulations. Defendants will file a motion to dismiss on these and other grounds, but submit that the foregoing is sufficient to defeat Plaintiffs' motion for preliminary injunction.

As this Court recognized in its order denying Plaintiffs' motion for temporary restraining order (TRO), the injunction Plaintiffs seek would, in effect, require Defendants to take positive action to process PUA benefits and make payments faster, thus going "well beyond simply maintaining the status quo pendente lite." *Brook Plaisance, et al. v. State of Louisiana, et al.*, CV 21-00121-BAJ-EWD, 2021 WL015879, at *3 (M.D. La. Mar. 16, 2021) (*citing Martinez v. Mathews*, 544 F.2d 1233, 1243 (5th Cir. 1976)). As this Court further noted, such an injunction "is particularly disfavored, and should not be issued unless the facts and law clearly favor the moving party." *Id.*

Moreover, the present motion is not requesting this mandatory injunctive relief in favor of the five named plaintiffs; but rather, is seeking to compel Defendants to take positive (and as will be shown below and at the hearing of this matter, impossible) action with respect to all, unknown, putative class action individuals. Defendants submit that due to a number of factors, including the very individualized nature of unemployment claims and the manifold factors that must be considered in adjudicating each claim class certification is improper. In any event, this case is a long way from a certified class action, and, as such, presently, this lawsuit is limited solely to claims made by the named plaintiffs. It would thus be procedurally and substantively improper to

issue any class wide injunction as Plaintiffs have requested. To do so, it would be necessary to determine the merits and the criteria for obtaining a preliminary injunction for every putative class member.  Defendants submit that the Plaintiffs will not be able to meet the high burden with respect to the named Plaintiffs, let alone an unknown and diffuse putative class.

As this Court noted in its March 16, 2021 Order denying the Motion for a TRO, Plaintiffs did not meet their burden of showing a substantial likelihood of prevailing on the merits; and that plaintiffs would have difficulty showing irreparable injury where monetary damages were sought. (**Doc. 13**) Defendants will show that these findings are equally applicable to the present Motion for preliminary injunction. These findings are even more convincing when considering that this lawsuit is styled as a class action, as will be discussed below. Though Plaintiffs' failure on the first two factors would be dispositive of their motion, Defendants will also be prepared to show that the harm and hardship to the LWC if an injunction is entered outweighs any injury to the Plaintiffs; and entry of an injunction would be a disservice to the public interest. Thus, Plaintiffs' motion for preliminary injunction should be denied accordingly.

### III. FACTUAL BACKGROUND

***Unemployment Insurance, Generally***

Generally speaking, the Unemployment Insurance program provides benefits to individuals who are unemployed through no-fault of their own.[6] As the administrator of the state's unemployment fund, LWC cannot assume eligibility on any initial claim for benefits, and must review all claims in order to determine whether there is fault on the part of a claimant in connection with their separation from employment, which could result in a disqualification for benefits.[7] Thus, when a claim is filed LWC first conducts an informal fact-finding proceeding to discover facts that

---

[6] Exh. 2-Aff. of Williams at ¶9.
[7] *Id.* at ¶ 10.

may affect the claimant's eligibility for benefits.[8] This fact-finding process consists of, at a minimum:

> i. sending notice of the claim to the employer, requiring that the employer furnish a response within 10 days of the notice, and
>
> ii. contacting the claimant and/or the employer for rebuttal or explanation of inconsistent versions of the facts provided by either party.

*Id.* at ¶ 12.

The claimant must also demonstrate that he or she is able and available for work and actively seeking employment.[9] As noted below, however, at the very outset of the pandemic, even before passage of the CARES Act, the LWC petitioned the Governor for an Executive Proclamation using his emergency powers, to suspend the requirement under La. R.S. 23:1600 that claimants register and search for work each week.[10]

Typically, absent a waiver of applicable federal regulations, the LWC is not permitted to allow contract workers to may make determinations or decisions relative to unemployment insurance claim; these tasks can only be performed by state merit-system employees.[11] Additionally, the state unemployment system's business requirements were designed to facilitate all of the above principles of the UI program in connection with, at most, two programs at any given time UI program as disaster unemployment assistance.[12]

---

[8]  Exh. 2.- Aff. of Williams at ¶11.
[9]  *Id.* at ¶14.
[10]  *Id.* at ¶15.
[11]  *Id.* at ¶17.
[12]  *Id.* at ¶19.

*The COVID-19 Pandemic and Corresponding Response*

In what would prove to be an eerily prescient statement, in a March 16, 2020 Proclamation (27-JBE-2020), a mere week after the first confirmed cases of COVID-19 in Louisiana, Governor John Bel Edwards decreed that:

- in only a matter of weeks, COVID-19 has had an economic impact on thousands of workers in the State of Louisiana, and will likely result in impacts to many more;

- individuals who are impacted by COVID-19 may not be able to report to work, they may need to be isolated or quarantined, they may have to care for a sick family member care for a child whose school is closed or be forced to quit their jobs;

- in addition, COVID-19 may cause businesses to shut down due to a slow down or lack of demand, institute temporary or partial layoffs;

- an individuals' inability to report to work due to a COVID-19 diagnosis, an individual being isolated or quarantined, caring for a sick family member, caring for a child whose school is closed and the extraordinary volume of resulting unemployment claims pose serious challenges to the effective and timely administration of the unemployment compensation system.

**Exhibit 3- Proclamation 27-JBE-2020.**

At that time, the State of Louisiana expressed an intent "to proactively address the significant emotional and economic impact upon Louisiana workers."[13] Like the Governor, LWC and the Secretary immediately recognized the real threat that the economic disruption caused by the pandemic posed, and they immediately asked the Governor to use his emergency powers to aid the LWC in paying the anticipated influx of claims. In response, the Governor, in his March 16, 2020 Proclamation relaxed certain provisions "for emergency-related claims, so as to allow the timely and fair administration of the unemployment insurance program."[14] Included among these

---

[13] *Id.*
[14] *Id.*

items was the suspension of the requirement under La. R.S. 23:1600 that claimants register and search for work.[15]

### *The CARES Act and Pandemic-Related Unemployment Benefits Expand Unemployment*

Eleven days after the aforementioned proclamation, Congress passed the Coronavirus Aid, Relief, and Economic Security (CARES) Act, and it was signed into law on March 27, 2020. The CARES Act expanded states' ability to provide unemployment insurance for many workers impacted by the COVID-19 pandemic, extending benefits to workers who were not ordinarily eligible for unemployment benefits. Congress established several new unemployment assistance programs to assist those who became unemployed due to COVID-19:[16]

- **Pandemic Emergency Unemployment Compensation (PEUC):** Individuals who have exhausted benefits on their unemployment claim and are still unemployed due to COVID-19 may qualify for PEUC.[17]

- **Pandemic Unemployment Assistance (PUA):** Individuals who do not qualify for state-funded unemployment benefits may qualify for PUA.[18]

- **Federal Pandemic Unemployment Compensation (FPUC):** Individuals who qualify for at least $1 in unemployment benefits under the various programs can get a supplemental payment in addition to payment of state or federal unemployment compensation.[19]

With the addition of pandemic related unemployment programs, LWC has been administering eight distinct benefits programs using systems that, as noted above, were designed to accommodate a maximum of two programs and even then only for a more finite period.[20] As is

---

[15] *Id.*
[16] Exh. 2 - Aff. of Williams at ¶21.
[17] *Id.* at ¶21
[18] *Id.*
[19] *Id.*
[20] *Id.* at ¶22.

often the case with new federal legislation, this legislation standing alone did not provide a framework for implementation of the federal pandemic unemployment programs, and was not sufficient for states to begin programming their benefits system.[21] Implementation of the legislation required extensive guidance from the United States Department of Labor (USDOL), which would come out in the form of Unemployment Insurance Program Letters (UIPLs) throughout the remainder of the year (and into 2021).[22]

Under PUA, unemployment benefits have been extended to individuals who:

1. are not eligible for regular compensation or extended benefits under State or Federal law or PEUC, including an individual who has exhausted all rights to regular unemployment or extended benefits under State or Federal law or pandemic emergency unemployment compensation;

2. provides self-certification that the individual: a. is otherwise able to work and available to work, except is unemployed, partially employed, or unable or unavailable to work because of one of the COVID-19 related reason identified in Section 2102(a)(3)(A)(ii)(aa) through (kk) of the CARES Act:

   i.    The individual has been diagnosed with COVID-19 or is experiencing symptoms of COVID-19 and is seeking a medical diagnosis.

   ii.   A member of the individual's household has been diagnosed with COVID-19.

   iii.  The individual is providing care for a family member or a member of the individual's household who has been diagnosed with COVID-19.

   iv.   A child or other person in the household for which the individual has primary caregiving responsibility is unable to attend school or another facility that is closed as a direct result of the COVID-19 public health emergency and such school or facility care is required for the individual to work.

   v.    The individual is unable to reach the place of employment because of a quarantine imposed as a direct result of the COVID-19 public health emergency.

---

[21] Exh. 2- Aff. of Williams at ¶ 23.
[22] *Id.* at ¶24.

    vi.    The individual is unable to reach the place of employment because the individual has been advised by a health care provider to self-quarantine due to concerns related to COVID-19.

    vii.    The individual was scheduled to commence employment and does not have a job or is unable to reach the job as a direct result of the COVID-19 public health emergency.

    viii.    The individual has become the breadwinner or major support for a household be-cause the head of the household has died as a direct result of COVID-19.

    ix.    The individual has to quit his or her job as a direct result of COVID-19.

    x.    The individual's place of employment is closed as a direct result of the COVID-19 public health emergency.

**Exh 2– Aff. of Williams** at ¶ 29.

Under the PUA, the LWC still has to analyze whether a claimant could qualify for Unemployment Insurance and/or PEUC before the claimant could receive PUA benefits.[23] Thus, Plaintiffs' apparent presumption that the implementation of PUA allowed LWC to simply fast track claims is severely out of step with reality.

***The Volume of Claims and Benefits Paid by LWC is Unprecedented***

In the calendar year, 2020, the LWC received approximately 1,116,301 claims for unemployment benefits under all programs.[24] This was almost a 975% increase over the claims for the prior year, which totaled 103,785.[25] From a dollar standpoint, the $153 Million that LWC paid in benefits in 2019 pales in comparison to the total of $7 Billion in benefits that LWC paid in 2020.[26]

***LWC Has Made Significant Efforts and Sacrifices to Increase its Claims Handling Capacity***

---

[23] Exh. 2 - Aff. of Williams at ¶ 27.
[24] Exh. 1 at ¶5.
[25] *Id.* at par.6
[26] *Id.* at ¶7.

Based on the influx of claims and the USDOL's eventual relaxation of restrictions on work that contract workers could perform, LWC has brought on significant reinforcements in efforts to address the deluge of claims in 2020. Specifically, LWC added 23 adjudicator (staff trained to handle more complex benefit determination) and added another 85 additional contract staff to grow its adjudicator ranks to 127, from a pre-pandemic roster of just 19.[27] LWC also increased its call center numbers to over 300, up from a pre-pandemic team of just 29.[28]

In addition to bringing in additional help in efforts to process the unprecedented volume of claims, the LWC's existing staff has gone above and beyond the call of duty to ensure that claims are processed. In fact, the LWC has been operative on all but 4 days in the past year, including working over the Christmas/New Year holidays to implement changes brought about by the December 27, 2020 Consolidated Appropriations Act, 2021, including Division N, Title II, Subtitle A (Continued Assistance Act or Act).[29]

### LWC is Charged with Maintaining Program Integrity and Combatting Fraud

In 2020, LWC has referred 28,000 cases to federal, state and local law enforcement.[30] As part of its daily tasks, LWC investigates potentially fraudulent claims and refers suspected fraud to the authorities on a daily basis.[31] As the pandemic and related changes in eligibility requirements and relaxation of certain requirements have increased the number of legitimate claims, it has likewise increased fraudulent activity.[32] Notably, in November, 2020, LWC thwarted more than 60,000 PUA claims that were likely attempted fraud.[33]

---

[27] Exh. 1 - Aff.of Mabile at ¶8.
[28] *Id.* at ¶9.
[29] *Id* at ¶ 10.
[30] *Id.*at ¶11.
[31] *Id.* at ¶12.
[32] Exh. 2 - Aff. of Williams at ¶35.
[33] Exh. 1 -Aff. of Mabile at ¶13.

## IV.  LAW AND ARGUMENT

### A.  Burden Of Proof on Preliminary Injunction.

Here, as this Court has previously noted, "a preliminary injunction is an extraordinary and drastic remedy; it is never awarded as of right" and should be granted only if the movant has clearly carried the burden of persuasion with respect to all elements. *Davis v. Peters*, CV 17-00795-BAJ-EWD, 2019 WL 1125649, at \*1–2 (M.D. La. Mar. 12, 2019) (*citing Munaf v. Geren*, 553 U.S. 674, 689-90 (2008) and *Allied Mktg. Grp., Inc. v. CDL Mktg., Inc.*, 878 F.2d 806, 809 (5th Cir. 1989)).  A court's "decision to grant a request for preliminary injunction is to be treated as the exception rather than the rule."  *Davis, supra.* (*citing Mississippi Power & Light Co. v. United Gas Pipe Line Co.*, 760 F.2d 618, 621 (5th Cir. 1985)).

Moreover, at all times, the burden of persuasion remains with Plaintiff as to each of the four elements, and thus to prevail a Plaintiff must establish:

(1) a substantial likelihood of prevailing on the merits;

(2) a substantial threat of irreparable injury if the injunction is not granted;

(3) the threatened injury outweighs any harm that will result to the non-movant if the injunction is granted; and

(4) the injunction will not disserve the public interest.

*Davis v. Peters*, *supra.* (*citing Ridgely v. Fed. Emergency Mgmt. Agency*, 512 F.3d 727, 734 (5th Cir. 2008)).

If a plaintiff fails to meet his burden regarding any of the necessary elements, the Court need not address the other elements necessary for granting a preliminary injunction. *See*, e.g., *Roho, Inc. v. Marquis*, 902 F.2d 356, 261 (5th Cir. 1990) (declining to address the remaining elements necessary

to obtain a preliminary injunction after finding that the plaintiff failed to show a substantial likelihood of success on the merits).

Thus, in general, the burden of proof borne by the movant on a motion for preliminary injunction is quite high in connection with any request for preliminary injunction. However, as the Court noted here, the "injunction Plaintiffs seek would, in effect, require Defendants to take positive action to process PUA benefits and make payments faster, thus going "well beyond simply maintaining the status quo pendente lite." *Plaisance, et al. v. State of Louisiana, et al.*, CV 21-00121-BAJ-EWD, 2021 WL015879, at *3 (M.D. La. Mar. 16, 2021) (*citing Martinez v. Mathews*, 544 F.2d 1233, 1243 (5th Cir. 1976)). This relief, sometimes called a mandatory injunction, "is particularly disfavored, and should not be issued unless the facts and law clearly favor the moving party." *Id*. Additionally, as this Court noted, the Plaintiffs here request that this Court intercede into the very operations of the LWC, a state agency, the "[i]ntrusion of federal courts into state agencies should extend no further than necessary to protect the federal rights of the parties." *Plaisance, supra.* (*citing Professional Ass'n of College Educators v. El Paso County Community College District*, 730 F.2d 258, 273 (5th Cir. 1984)).

**B.  Plaintiffs Cannot Establish A Substantial Likelihood Of Success On The Merits.**

As noted above, Defendants have ample support for the position that this court is without jurisdiction over the LWC and the Secretary. Defendants will, brief the issue of Sovereign Immunity further in connection with a motion to dismiss, but note that Courts have consistently found that the Eleventh Amendment precludes the plaintiff's action against these Defendants in federal court. *See, Sandres v. Louisiana Workforce Comm'n*, CIV.A.09-652-C, 2010 WL 565378, at *3 (M.D. La. Feb. 17, 2010); *Price v. Unifab Int'l, Inc.*, CIV.A. 05-1047, 2005 WL 2898236, at *2 (M.D. La. Oct. 31, 2005) *Valdery v. Louisiana Workforce Comm'n,* CIV.A. 15-01547, 2015

WL 5307390, at *1 (E.D. La. Sept. 10, 2015) *(the court granted the motion to dismiss both LWC and its official in a lawsuit seeking dam-ages and injunctive relief)*.  Notably, in each of the above-referenced cases, the court granted motions to dismiss in favor of LWC and/or state officials working in their official capacity on Eleventh Amendment grounds. Further it seems intuitive but bears mentioning that the same immunity that applies to defeat claims against LWC likewise extends to the Secretary since a "suit against a state official in his official capacity for monetary damages is treated as a suit against the state and is therefore barred by the Eleventh Amendment." *See, e.g., Chaney v. Louisiana Work Force Comm'n,* 560 Fed.Appx. 417, 418 (5th Cir.2014).

The Sovereign Immunity issue should prove to be an insurmountable obstacle and thus make it unlikely that Plaintiffs will succeed on the merits, but even if they can somehow establish that they can avoid dismissal on these grounds, there are many other issues that must be ultimately proven for Plaintiffs to prevail. Another threshold issue will be whether there even exists a private right of cause of action under the CARES Act.  Numerous federal decisions have held that there is not private right of action or implied right of action under the Cares Act. *See*, e.g., *Autumn Court Operating Co. LLC v. Healthcare Ventures of Ohio*, 2021 WL 325887 (S.D. Ohio, Eastern Div. Feb.1, 2021; *Radix Law PLC v. JPMORGAN Chase Bank,* 2020 WL 8020120, (D. AZ. Dec. 21, 2020).

Plaintiffs must also prove, as noted in Plaintiffs' Motion **(Doc. 11-1)** p. 7, whether LWC acted in "an arbitrary and capricious manner" and whether the delays in processing claims were "arbitrary and capricious." At the outset, Plaintiffs' allegations are indicative of a lack of understanding of the manifold factors that go into the adjudication of each claim for benefits. Indeed, it is somewhat ironic that Plaintiffs make a claims of violations when one of the hallmarks of the Louisiana Employment Security Law, La. R.S. 23:1471, *et seq.* is the considerable due

process that is inherent in the law.  Additionally, Plaintiffs suffer under the erroneous impression that all claims are similar such that they could be adjudicated en masse; this is simply inconsistent with the nature of the claims and the process for adjudicating the same.

Indeed, because the Motion for Preliminary Injunction seeks extraordinary relief on behalf of all putative class members, Plaintiffs have the burden of proof on each and every issue applicable to each and every putative class member. Yet, Plaintiffs' Memorandum in Support is replete with reference to "some class members" and "some plaintiffs." These vague and factually unsupported allegations cannot support the broad injunctive relief sought nor meet the substantial likelihood of success on the merits.

Moreover, even as to just the individual named plaintiffs, Plaintiffs will not be able to establish a substantial likelihood of success on the merits.  Specifically, Plaintiffs have not presented evidence to establish: 1) That each and every requirement necessary for eligibility under the Pandemic Unemployment Assistance ("PUA) program under State or Federal law. Section 2102(3)(A)(i); or, alternatively, that they were eligible for regular (state) unemployment insurance benefits and/or PEUC.; 2) that their claims were processed improperly; 3) that the LWC's process was "arbitrary and capricious; and 4) the delay in processing was not caused by other factors that impeded the claims process or caused delays which the LWC could not have avoided given the unprecedented and overwhelming amount of claims for benefits that had to be processed.

At the hearing on the merits, the LWC will present testimony regarding the rapid implementation of additional unemployment assistance programs.  As noted above, the LWC, which typically administers one benefits program and up to two programs in catastrophic times, e.g., natural disasters, the Great Recession stood up 8 distinct assistance programs, each with their

14

own guidelines and requirements.[34]  The process of implementing these programs is not as simple as flipping a switch, and, each time a new program is introduced there is at least some refinement necessary to adjust the manner in which it interacts with other programs administered by LWC. This process of implementing and administering these programs is deliberate, complex and designed with the overarching goal of paying benefits to as many eligible claimants as possible.

Ultimately, the proof and ultimate resolution of the Constitutional allegations of taking of property without due process requires the analysis of myriad issues imbedded in the requirements and administrative demands caused by state and federal regulations, the overwhelming details and requirements of processing, verifying identification, eligibility, payment, denial and delays caused by the approximate 800,000 claims for unemployment benefits under the PUA program. A procedural due process challenge involves a two-step inquiry: "First, [the court] determine[s] whether the state has deprived a person of a liberty or property interest; if there has been such a deprivation, we must determine whether the procedures relative to that deprivation were constitutionally sufficient." *Welch v. Thompson*, 20 F.3d 636, 639 (5th Cir.1994). Once it is determined a plaintiff has a property interest that implicates the protections of procedural due process, courts then evaluate the constitutionality of the procedures by utilizing a balancing test in determining what process is due: (1) the private interest affected by the government action; (2) the risk of an erroneous deprivation of a protected interest under the current procedures and the value of additional or substitute procedural safeguards; and (3) the government interest, including the fiscal and administrative burdens of implementing additional or substitute procedures. *Mathews v. Eldridge,* 424 U.S. 319, 335, 96 S. Ct. 893, 47 L.Ed.2d 18 (1976)

---

[34]  Exh. 2- Aff. Of Williams at ¶19; ¶22.

As will be shown at the hearing of this matter, Plaintiffs do not even have a substantial likelihood of surviving a motion to dismiss let alone establishing a likelihood of success on the merits.  As such, Plaintiffs have failed to meet the first of the four elements in their burden and this motion for preliminary injunction should be denied accordingly.

### C.  Plaintiffs Have No Irreparable Harm.

As noted in this Court's prior order, and in numerous other decisions, Plaintiffs are seeking to recover financial harms and "financial harms such as those alleged here are generally not irreparable because they can be addressed by monetary damages." Still, however, financial harms such as those alleged here are generally not irreparable because they can be addressed by monetary damages. *Brook Plaisance, et al. v. State of Louisiana, et al.,* CV 21-00121-BAJ-EWD, 2021 WL 1015879, at *2 (M.D. La. Mar. 16, 2021) (*citing Janvey v. Alguire*, 647 F.3d 585, 600 (5th Cir. 2011)) *see, also Deerfield Med. Ctr. v. City of Deerfield Beach,* 661 F.2d 328, 338 (5th Cir. Unit B 1981); *Parks v. Dunlop,* 517 F.2d 785, 787 (5th Cir.1975)*.* Here, Plaintiffs repeatedly reference economic harm and give short shrift to the other putative claims such that a plain reading of the Plaintiffs' own pleadings strongly supports the notion that their claims would be compensable in money.  Further, in the class action setting in particular, injunctive relief fails when damages on behalf of the class are also sought; and the proof needed would have to address the harm to each class member. *See, Walmart v. Dukes,* 564 US 338 (2011); and *Paternostro v. Choice Hotel Interactive Services*, 309 F.R.D. 397 (E.D. La. 2015).

In *Parks v. Dunlop, supra.,* the 5th Circuit agreed with the United States Secretary of Labor's argument that there was "no showing that [plaintiff] would be irreparably harmed if the Secretary were not enjoined…[That] would mean that his only damages, if he were to be held entitled to prevail on the merits, would be the monetary loss calculated on the pay differential .…"

517 F.2d at 787. Applying The Fifth Circuit's reasoning to the instant case, if the named plaintiffs were to prevail on the merits, the only damages they would have is the monetary loss(es) as calculated on the differential of the amount they were paid and/or not paid by the LWC. In *Parks*, the plaintiff argued that the injunction was "necessary to maintain the '*status quo'." Id.* The Fifth Circuit rejected that argument, finding that it "misconceives the central purpose of a preliminary injunction, which is to prevent irreparable harm." *Id.* Accordingly, the court thus reversed the district court's granting of a preliminary injunction. *Id.*

### D. The Balancing Of Hardship And Harm Weighs Strongly In Favor Of LWC.

Though Plaintiffs have failed to establish either of the first two elements such that the Court may never reach the third or fourth elements, Defendants submit that these elements present perhaps the strongest grounds for denial of Plaintiffs' motion for preliminary injunction. Defendants will show that these requests and the proposed mandatory injunction sought by Plaintiffs are not only ambiguous but clearly impose an extreme, undue and likely indeterminate burden, hardship and harm to the LWC as it continues to process heightened volumes of claims for unemployment benefits across various programs.

Plaintiffs' demand, taken to its logical end, would mean that LWC would be compelled to shift all of its attention to "claims, and appeals" pending for more than thirty (30) days prior to entrance of the injunction. (**Doc. 11-1** at p. 31, ¶131.). LWC has been processing unemployment benefits claims for over a year such that the volume of claims that Plaintiffs' desired relief would encompass is immense. This would grind the processing of new claims to a halt and still would not yield the immediate processing of claims that Plaintiffs imagine; each claim has so many variables that Plaintiffs' desired result is simply unrealistic. LWC would be compelled to stop the processing of present and future claims, expend thousands of hours or more time the LWC does

not have. It would thus require LWC to hire, train, and obtain more financial support to pay for the Plaintiffs' wish-lists of Plaintiffs requests. LWC notes that it has already hired 300 additional call center workers, and an additional 23 adjudicators and 85 additional contract staff to grow its adjudicator ranks to 127, from a pre-pandemic figure of just 19.[35] In order to comply with Plaintiffs' requested relief and continue to process new claims, LWC would have to hire and train even more additional workers. In sum, these requests are financially and humanly infeasible.

Some of the other, more specific, requests – e.g., provide the Court, within 10 days, the information necessary to identify the members of the class, etc. Not only are these requests fraught with the same hardships noted above, but these requests seek information that is statutorily protected from disclosure.  Specifically, La. R.S. 23:1660(D)(1) provides, in pertinent part, that

> Information, statements, transcriptions of proceedings, transcriptions of recordings, electronic recordings, letters, memoranda, and other documents and reports thus obtained, or obtained from any individual, claimant, employing unit, or employer pursuant to the administration of this Chapter, except to the extent necessary for the proper administration and enforcement of this Chapter, ***shall be held confidential and shall not be subject to subpoena in any civil action or proceeding, nor be published or open to public inspection***, other than to public employees in the performance of their public duties, including the office of workers' compensation in any manner revealing the individual's or employing unit's identity.

This statute creates, not only a bar to subpoena in civil proceedings, but also an exception to Louisiana's robust public records law. La. R.S. 44:4.1(B)(12). Indeed, the LWC is even mandated by federal regulations to file and diligently pursue a motion to quash any subpoena or other compulsory process which requires the production of confidential unemployment compensation information or appearance for testimony upon any matter concerning such information. 20 C.F.R. § 603.7.

---

[35] Exh. 1 at ¶8.

Moreover at their essence, these requests are more like discovery requests generally not permitted in class actions. (See: *In re: Williams-Sonoma, Inc.*, 947 F.3d 535, 539-540 (9th Cir. 2020). Further, this lawsuit has not been certified as a class, yet Plaintiffs are asking the LWC to determine what a federal court must ultimately decide if this lawsuit was certified as a class. These requests are a transparent attempt to circumvent normal discovery but are clearly, at best, premature, but more likely inappropriate altogether given the aforementioned statutory confidentiality set forth in La. R.S. 23:1660. This lawsuit is presently limited to the named plaintiffs' claims, not yet relevant to claims of any other individual.

The harm alleged by the presently known five named plaintiffs is clearly outweighed by the harm and hardships this preliminary injunction would impose on the LWC.  Moreover, as discussed further below, the harm that an injunction would cause LWC and the Secretary would be felt by tens of thousands of Louisiana unemployment applicants who would have their claims placed on the backburner to respond to Plaintiffs unwieldy demands. Considering the extreme hardships that would be imposed, the Plaintiffs "have not shown that [the harm to these individual Plaintiffs] "is outweighed by the significant human and financial costs which result from and injunction." *Acquifier Guardians v. Federal Highway Administration*, 779 F.Supp.2d 542, 575 (W.D.Texas, San Antonio Div., 2011).

### E.  Entry of an Injunction Would Result in a Disservice To The Public.

As noted above, the requests by Plaintiffs in this Motion for Preliminary Injunction would only lead to further delay in the processing of claims to potentially tens of thousands of applicants; and many more individuals who have no employment and will be applying for PUA benefits in the future, given the extensions given by the federal government. The "public" is not the five named plaintiffs, as they are the only individuals presently making these allegations. And if there

may be "some" potential "claimants" other than the named plaintiffs that would create a greater disservice to the public – i.e., the tens of thousands of present applicants whose claims have not been fully processed and the many more future applicants. The unrelated unemployment benefits determinations and other actions that need to be taken by the LWC notwithstanding the PUA program and other pandemic and disaster-related relief would also be halted or greatly impeded. The LWC would not be able to accomplish its many present or future responsibilities to the public if any of the requests made in the Motion for Preliminary Injunction are ordered by this Court. Thus, the entry of an injunction as sought by Plaintiffs would be a grave disservice to the public at large by preventing the LWC from doing the work of adjudicating and paying claims and maintaining program integrity.

In *West Alabama Quality of Life Coalition v. United States Federal Highway Administration*, 302 F. Supp. 2d, 302 F. Supp. 2d 672, 686 (S.D. Texas, Houston Div., 2009), in evaluating the relative harm, the court considered "the public consequences and not just the consequences to the individuals parties before the court," and denied the preliminary injunction as it was "not in the public interest at the present time."

## V.  CONCLUSION

As set for the above, in addition to the jurisdictional issues that should serve as a bar to Plaintiffs' suit against LWC and The Secretary, Plaintiffs simply cannot meet their burden of proof in this motion seeking a mandatory injunction. Accordingly, Plaintiffs' motion for preliminary injunction should be denied.

Respectfully Submitted:

**ADAMS AND REESE LLP**

*/s/ Kellen J. Mathews*
William B. Gaudet (#1374)
Kellen J. Mathews (#31860)
ADAMS AND REESE LLP
Hancock Whitney Center
701 Poydras Street, Suite 4500
New Orleans, LA 70139
Telephone: (504) 585-0263
Fax: (504) 566-0210
William.Gaudet@arlaw.com
Kellen.Mathews@arlaw.com

***ATTORNEYS FOR STATE OF LOUISIANA WORKFORCE COMMISSION AND AVA DEJOIE***

21

## <u>CERTIFICATE OF SERVICE</u>

I HEREBY CERTIFY that a copy of the above and foregoing has been filed and served upon all counsel of record electronically with the Clerk of Court using the CM/ECF system this the 26th day of March, 2021.

*/s/ Kellen J. Mathews*
KELLEN J. MATHEWS