**IN THE UNITED STATES DISTRICT COURT**
**FOR THE MIDDLE DISTRICT OF LOUISIANA**

| | |
|---|---|
| BROOKE PLAISANCE, FREDERICK BASS, AMANDA COLEMAN, STEPHEN STRICK, AND WILIAM GRIESHABER, on behalf of themselves and those similarly situated, | **Civil Action No.: 3:21-CV-121-BAJ-EWD** |
| *Plaintiffs*, | **Judge: BRIAN A. JACKSON** |
| v. | **Magistrate: ERIN WILDER-DOOMES** |
| STATE OF LOUISIANA; LOUISIANA WORKFORCE COMMISSION; AVA M. DEJOIE, in her official capacity as Secretary of the Louisiana Workforce Commission; AND JOHN BEL EDWARDS, in his official capacity as chief executive officer of the State of Louisiana, | |
| *Defendants*. | |

**MEMORANDUM OF LAW IN SUPPORT OF PLAINTIFFS'**
**MOTION FOR CLASS CERTIFICATION**

Ellyn J. Clevenger
Wendy Manard
Manard Law

Saima A. Akhtar
National Center for Law and Economic Justice
ATTORNEYS FOR PLAINTIFFS

# <u>TABLE OF CONTENTS</u>

Table of Authorities .............................................................................................i

I.      Introduction ...........................................................................................1

II.     Regulatory and Statutory Scheme..........................................................4

III.    Factual Background ...............................................................................5
        **A.** Named Plaintiffs ........................................................................6

IV.     Argument ...............................................................................................9
        **A.** The Proposed Classes meet the Requirements of Rule 23(a) .......11
                **1.**  The Members of the Class and Sub-classes are so Numerous that
                       Joinder of all Members is Impracticable...............................11
                **2.**  There are Questions of Law and Fact Common to the Classes. .............14
                **3.**  The Claims of the Named Plaintiffs are Typical. ...................18
                **4.**  The Named Plaintiffs and Class Counsel Will Fairly and Adequately
                       Protect the Interests of the Proposed Class and Sub-Classes.................19
        **B.** The Putative Class Satisfies the Requirements of Rule 23(b)(2)..................21
        **C.** The Proposed Classes are Ascertainable........................................................23

V.      Conclusion ...........................................................................................24

## **TABLE OF AUTHORITIES**

### **CASES**

*Allison v. Citgo Petroleum Corp.*, 151 F.3d 402 (5th Cir. 1998)................................... 11

*Amchem Prods., Inc. v. Windsor*, 521 U.S. 591 (1997)........................................... 10, 24

*Amgen Inc. v. Ret. Plans & Tr. Funds*, 568 U.S. 455 (2013) ...................................... 11

*Barry v. Corrigan*, 79 F. Supp. 3d 712 (E.D. Mich. 2015)........................................ 27

*Berger v. Compaq Computer Corp.*, 257 F.3d 475 (5th Cir. 2001) ............................. 24

*Briggs v. Dunn*, 321 F.R.D. 653 (M.D. Ala. 2017) ................................................. 13

*Chavez v. Plan Benefit Servs., Inc.*, 957 F.3d 542 (5th Cir. 2020) ............................ 12

*Cole v. City of Memphis, 839 F.3d 530 (6th Cir. 2016)* ........................................... 29

*Cuellar v. Texas Employment Com'n*, 825 F.2d 930 (5th Cir. 1987) ............................. 7

*Dockery v. Fischer*, 253 F. Supp. 3d 832 (S.D. Miss. 2015) ...................................... 18

*Doe by Doe v. Chiles*, 136 F.3d 709 (11th Cir. 1998) ............................................. 27

*Eisen v. Carlisle & Jacquelin*, 417 U.S. 156 (1974)................................................ 11

*Feder v. Electronic Data Systems Corp., 429 F.3d 125 (5th Cir. 2005)* ...................... 24

*Flecha v. Medicredit, Inc.*, 946 F.3d 762 (5th Cir. 2020).......................................... 12

*Frey v. First Nat. Bank Sw.*, 602 F. App'x 164 (5th Cir. 2015) (unpublished) ............. 28

*Garcia v. Gloor*, 618 F.2d 264 (5th Cir. 1980)..................................................... 16

*Garnett v. Zeilinger,* 301 F. Supp. 3d 199 (D.D.C. 2018) ........................... 12, 19, 22, 27

*Goldberg v. Kelly*, 397 U.S. 254 (1970) ............................................................... 7

*Hays v. Eaton Group Attorneys, LLC, 2019 WL 427331 (M.D. La. Feb. 4, 2019)* ...................... 24

*Ibarra v. Texas Employment Com.*, 598 F. Supp. 104 (E.D. Tex. 1984).................................... 12

*Ibe v. Jones, 836 F.3d 516 (5th Cir. 2016)* ......................................................... 18

*In re Deepwater Horizon*, 739 F.3d 790 (5th Cir. 2014) ....................................... 18, 28

*In re Monumental Life Ins. Co.*, 365 F.3d 408 (5th Cir. 2004)..................................... 29

*Jack v. American Linen Supply Co.*, 498 F.2d 122 (5th Cir. 1974) .............................. 16

*Jenkins v. Raymark Indus.*, 782 F.2d 468 (5th Cir. 1986) ........................................ 11

*John v. Nat'l Sec. Fire and Cas. Co., 501 F.3d 443 (5th Cir. 2007)* ........................... 28

*Jones v. Diamond*, 519 F.2d 1090 (5th Cir. 1975).................................................. 26

*Lane v. Campus Fed. Credit Union, 2017 WL 3719976 (M.D. La. May 16, 2017)* ................... 18

*Leiting-Hall v. Winterer, 2015 WL 1470459 (D.Neb. Mar. 31, 2015)* ................................ 19, 22

*Lewis v. Cain*, 324 F.R.D. 159 (M.D. La. 2018)................................................ 13, 16

*Lightbourn v. Co. of El Paso*, 118 F.3d 421 (5th Cir. 1997) ................................... 17, 22

*M.D. ex rel. Stukenberg v. Perry, 675 F.3d 832 (5th Cir. 2012)* ....................... 18, 19, 27

*Maldonado v. Ochsner Clinic Found.*, 493 F.3d 521 (5th Cir. 2007) ............................. 10

*Marisol A. by Forbes v. Giuliani*, 126 F.3d 372 (2d Cir. 1997) ............................... 19, 22

*Mullen v. Treasure Chest Casino, LLC*, 186 F.3d 620 (5th Cir. 1999) ....................... 14, 22

*Phillips v. Joint Legislative Comm.*, 637 F.2d 1014 (5th Cir. 1981) ......................... 13, 16

*Pitts v. Greenstein*, No. 10–635–JJB–SR, 2011 WL 2193398 (M.D. La. June 6, 2011) . 13, 16, 17

*Reynolds v. Giuliani,* 118 F. Supp. 2d 352 (S.D.N.Y. 2000)...................................... 12

*Seeligson v. Devon Energy Prod. Co., L.P.*, 761 Fed. Appx. 329 (5th Cir. 2019) ................... 28

*Shady Grove Orthopedic Assocs., P.A. v. Allstate Ins. Co.*, 559 U.S. 393 (2010) ..................... 11

*Shelton v. Bledsoe*, 775 F.3d 554 (3d Cir. 2015) ........................................................................ 29

*Shook v. El Paso Cty.*, 386 F.3d 963(10th Cir. 2004)................................................................. 29

*Teta v. Chow (In Re TWL Corp.)*, 712 F.3d 886 (5th Cir. 2013) ........................................ 11, 17

*Union Asset Mgmt. Holding A.G. v. Dell, Inc.*, 669 F.3d 632 (5th Cir. 2012) .......................... 28

*Valentine v. Collier*, 2020 WL 3491999 (S.D. Tex. Jun. 27, 2020) ......................................... 26

*Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338 (2011) .............................................. 17, 18, 21, 22

*Ward v. Hellerstedt*, 753 F. App'x 236 (5th Cir. 2018)......................................................... 11, 18

*Yaffe v. Powers*, 454 F.2d 1362 (1st Cir. 1972) ........................................................................ 29

*Yates v. Collier, 868 F.3d 354 (5th Cir. 2017)* ............................................................. 18, 26, 27

*Zeidman v. J. Ray McDermott & Co.,* 651 F.2d 1030 (5th Cir.1981) ........................................ 13

## STATUTES

15 U.S.C. § 9021 *et seq.*............................................................................................................... 5

42 U.S.C. § 503(a)(1)........................................................................................................... 2, 16, 23

42 U.S.C.A. §§ 501 *et seq.*............................................................................................................ 4

La R.S. § 23:1626 .......................................................................................................................... 6

La. R.S. § 23:1471 ........................................................................................................................ 14

La. R.S. § 23:1471 *et seq* ........................................................................................................... 4, 5

La. R.S. § 23:1472(1).................................................................................................................... 4

La. R.S. § 23:1595 ......................................................................................................................... 5

La. R.S. § 23:1624 ......................................................................................................................... 6

La. R.S. § 23:1625 ......................................................................................................................... 6

La. R.S. § 23:1629(A).................................................................................................................. 2, 3

La. R.S. § 23:1664 ......................................................................................................................... 4

La. R.S. §§ 23:1622-1624 ............................................................................................................. 5

La. R.S. §§ 23:1624-26 ................................................................................................................. 2

## RULES

Federal Rule of Civil Procedure 23 ............................................................................................... 9

Federal Rule of Civil Procedure 23(a) ...................................................................................... 3, 11

Federal Rule of Civil Procedure 23(a)(3) .................................................................................... 18

Federal Rule of Civil Procedure 23(a)(4) .................................................................................... 19

Federal Rule of Civil Procedure 23(b)(2) ................................................................................ 3, 11, 21

Local Civil Rule 23 ....................................................................................................................... 3

## TREATISES

1 NEWBERG ON CLASS ACTIONS § 3.05  (3d ed.1992) ................................................................. 11

1 NEWBERG ON CLASS ACTIONS § 3:12 (5th ed. 2012)................................................................. 14

NEWBERG ON CLASS ACTIONS § 3:3 (5th ed. 2011)..................................................................... 23

## REGULATIONS

20 C.F. R. § 650.4(b) (2021)..........................................................................13

## CONGRESSIONAL ACTS

Consolidated Appropriations Act of 2021 ......................................... 2, 5
Coronavirus Aid, Relief, and Economic Security ("CARES") Act.......................... 2, 5
The American Rescue Plan.................................................................. 5

## EXECUTIVE MATERIALS

U.S. DEP'T OF LABOR, *Unemployment Insurance Weekly Claims Data – Report r539cy* ............ 12

## ARTICLES

*Some Louisianans Still Not Seeing Unemployment Benefits* ....................................... 12

Plaintiffs Brooke Plaisance, Frederick Bass, Amanda Coleman, Stephen Strick, and William Grieshaber, on behalf of themselves and all others similarly situated (collectively "Plaintiffs"), submit this Memorandum in Support of their Motion for Class Certification, and respectfully represent to the Court as follows.

## I.  INTRODUCTION

As a result of the COVID-19 pandemic, Louisiana faces an unprecedented economic crisis. Plaintiffs are among the hundreds of thousands of Louisianans who have lost their jobs and have not been able to find new employment. Unemployment benefits are essential to helping workers and their families meet their needs and maintain their basic livelihoods when facing unemployment. In response to the substantial job loss that resulted from the pandemic, Congress dramatically expanded the unemployment program. However, Plaintiffs and proposed class members have been unable to timely obtain desperately needed benefits for which they are eligible, been deprived of adequate notice regarding their benefits, or have been cut off from the benefits they were receiving off due to Defendants' failure to properly administer the Louisiana State Unemployment Compensation System.

Pursuant to 42 U.S.C. § 1983, Plaintiffs allege violations of their Constitutional right to Due Process, their privately enforceable federal rights under 42 U.S.C. Section 503, and their rights under the laws of the State of Louisiana governing unemployment programs.  Defendant John Bel Edwards, in his official capacity as the Chief Executive Officer of the State of Louisiana, Defendant Ava M. Dejoie, in her official capacity as Secretary of the Louisiana Workforce Commission ("LWC"), and Defendant LWC are failing to: 1) complete the process of

determining eligibility for unemployment compensation ("UC");[1] 2) provide adequate notice of a determination of eligibility for UC or termination from UC, and 3) maintain a constitutionally sufficient process for seeking administrative review of agency actions. Specifically, Defendants Dejoie and LWC have a custom, policy, pattern and practice of failing to: render eligibility determinations on UC claims "when due" pursuant to 42 U.S.C. § 503(a)(1)[2]; provide legally sufficient notice, under La. R.S. §§ 23:1624-26 and the Due Process Clause of the Fourteenth Amendment, that is reasonably calculated to inform Named Plaintiffs and putative class members of their rights at a time that would allow them to avail themselves of a meaningful administrative review; and, make meaningful administrative review available to Named Plaintiffs and putative class members in violation of La. R.S. § 23:1629(A)[3] and the Due Process Clause of the Fourteenth Amendment. The administrative review process offered by Defendants subjects claimants to unconscionable delays that substantially exceed recommended federal Department of Labor timing standards, while presumptive class members languish without access to critical UC benefits or usable administrative recourse. Moreover, Defendants provide no information by notice or opportunity to seek review of the LWC's determination to terminate benefits before the putative class member has their income cut off. A UC claimant cannot contest

---

[1] "Unemployment compensation," and "unemployment insurance" refers to benefits obtained through: Louisiana's unemployment insurance trust fund, known as State Unemployment Compensation; Pandemic Unemployment Assistance ("PUA"), Federal Pandemic Unemployment Compensation ("FPUC") or Pandemic Emergency Unemployment Compensation ("PEUC"), created by the federal CARES Act and extended by the Consolidated Appropriations Act of 2021 and the American Rescue Plan; or Mixed Earner Unemployment Compensation ("MEUC") created by the Consolidated Appropriations Act of 2021.

[2] Section 303 of the Social Security Act, as amended 42 U.S.C. Section 503.

[3] Once a notice of determination is given, claimants or employers may appeal the determination within fifteen days. *See* La. R.S. § 23:1629(A). Next, "[t]he appeal referee shall mail a 'notice to appear for a hearing' to all parties to the appeal at least ten days prior to the date of hearing…." *Id*.

the basis for the termination, and protect their critical UC. In some cases, Defendants are failing to provide any written notice of a claimant's eligibility or termination from UC benefits, and, as a result, deprive claimants of access to administrative review.

The result of the cumulative and persistent failures in the administration and operation of UC programs in Louisiana deprives both Named Plaintiffs and putative class members of UC benefits needed to survive and their Constitutional Right to Procedural Due Process.

Accordingly, Plaintiffs hereby seek entry of an Order, pursuant to Federal Rules of Civil Procedure 23(a) and (b)(2) and Local Civil Rule 23, certifying a class consisting of:

> All individuals who, since March 13, 2020, applied for unemployment insurance benefits through the Louisiana Workforce Commission and have been, are being, or will be denied access to State Unemployment Compensation, Federal Pandemic Unemployment Compensation, Pandemic Emergency Unemployment Compensation, Mixed Earner Unemployment Compensation or Pandemic Unemployment Assistance benefits without a timely and/or adequate determination of benefits eligibility.

As well as two subclasses, consisting of:

1. Individuals that have neither received an unemployment compensation benefit nor an adequate and/or timely written decision regarding their eligibility for benefits, including, in the event that benefits denied, a statement of their right to appeal this determination to the Louisiana Workforce Commission. This class is referred to as the **Denial of Benefits Subclass**.

2. Individuals who, at some time since March 13, 2020, have received Unemployment Compensation benefits but whose benefits were terminated by the Louisiana Workforce Commission without timely and/or adequate notice and opportunity to dispute this adverse action, either prior to or following the termination of their benefits. This class is referred to as the **Termination of Benefits Subclass.**

## II. Regulatory and Statutory Scheme

The Louisiana state unemployment compensation system ("State Unemployment Compensation"), provides for the payment of unemployment compensation over an extended period of time to unemployed workers. *See* La. R.S. § 23:1471 *et seq.* The State Unemployment Compensation program is financed in part by federal grants pursuant to the Social Security Act,

42 U.S.C.A. §§ 501 *et seq.*, on certification by the Secretary of Labor pursuant to Section 303 of the Social Security Act (42 U.S.C.A. § 503) that the program conforms to federal requirements, including the requirement of Section 303(a)(1) (42 U.S.C.A. § 503(a)(1)) that the methods of administration "are found by the Secretary of Labor to be reasonably calculated to insure full payment of unemployment compensation when due."

The State Unemployment Compensation program is administered by the Louisiana Workforce Commission. La. R.S. § 23:1472(1). Defendant Dejoie, the Secretary of the LWC, must ensure that the LWC complies with all relevant federal laws and obligations. La. R.S. § 23:1664. Under the State Unemployment Compensation system, when an eligible person loses their job under qualifying circumstances, they are entitled to collect unemployment compensation to help them maintain their basic livelihood while they search for a new job. La. R.S. § 23:1471 *et seq.* The Louisiana UC system consists of weekly cash payments for up to 26 weeks. La. R.S. § 23:1595.

In recognition of the unprecedent economic effects of the COVID-19 pandemic, the United States Congress enacted the Coronavirus Aid, Relief, and Economic Security ("CARES") Act, which created three new unemployment programs: Pandemic Unemployment Assistance ("PUA"), Federal Pandemic Unemployment Compensation ("FPUC"), and Pandemic Emergency Unemployment Compensation ("PEUC"), that expanded unemployment compensation to many workers who were otherwise ineligible, extended eligibility time periods, and increased weekly benefit amounts. 15 U.S.C. § 9021 *et seq*. The Consolidated Appropriations Act of 2021 extended the duration of these three programs and added a fourth, the Mixed Earners

Unemployment Compensation ("MEUC").[4] The American Rescue Plan, signed on March 11, 2021, further extended all four programs through September 4, 2021.[5]

### III. Factual Background

In Louisiana, all unemployment compensation programs are administered by the LWC. In order to apply for unemployment compensation, a claimant files a claim with the LWC, and the LWC determines whether the claimant qualifies for unemployment compensation. La. R.S. §§ 23:1622-1624.

Within thirty days of the date the UC claim was filed, LWC shall issue a notice of determination to the claimant that includes a statement as to whether benefits are payable, the week with respect to which benefits shall commence, the weekly benefit amount payable and the maximum duration of benefits. La. R.S. § 23:1624.

Unemployment compensation can only be terminated prior to relevant statutory time periods if, on reconsideration, the LWC finds that benefits were allowed based on a misrepresentation of fact or that an error in interpretation of fact or application of law has occurred, or if a subsequent event related to the claimant's separation from employment, such as a conviction, indicates that the award of benefits was improper. La R.S. § 23:1626. Because unemployment compensation benefits can only be terminated for cause as described above, they qualify as property for purposes of the Fourteenth Amendment to the United States Constitution. *See Goldberg v. Kelly*, 397 U.S. 254, 262 (1970) (stating that the Fourteenth Amendment's

---

[4] *See* Pub. L. No. 116-260, https://www.congress.gov/116/bills/hr133/BILLS-116hr133enr.pdf (last visited April, 2021).
[5] *See* https://www.congress.gov/bill/117th-congress/house-bill/1319/text (last visited April 29, 2021).

constitutional restraints apply to unemployment compensation) (citation omitted); *see also Cuellar v. Texas Employment Com'n*, 825 F.2d 930 (5th Cir. 1987) (same).

When the LWC finds that a person who was previously deemed eligible for unemployment benefits is not actually qualified, Louisiana law requires the LWC to provide notice to individuals of the disqualification. La. R.S. § 23:1625. This notice must be served "promptly" and include the reasons for the decision. *Id*. In spite of this requirement, the LWC has continuously failed to ensure that claimants receive adequate notice of the reason for the termination.  Among other failings, the notice forms utilized by the LWC contain conclusory statements regarding the action taken on the claimant's case, and fail to provide claimants with sufficient information to understand why an adverse action has been taken against them.  *See* Akhtar Decl. Ex. D, E.

### A.  Named Plaintiffs

Plaintiffs are Louisiana residents who, since March 13, 2020, applied for unemployment insurance benefits through LWC and have been, are being, or will be denied access to UC benefits without a timely and/or adequate determination of benefits eligibility.

Brooke Plaisance worked at commercial equipment repair company. *See* Compl. ¶ 46. On March 31, 2020, Ms. Plaisance was furloughed due to the COVID-19 pandemic. *Id.* Ms. Plaisance submitted her application for UC benefits on March 31, 2020 and subsequently uploaded the required wage information onto the online portal. *Id.* at ¶ 47. Currently, her online portal notes that her claim is "processing" for some weeks, and that she is "disqualified" for others. *Id.* at ¶ 49. Despite diligent attempts to reach LWC, including calling, emailing, and filing two additional claims at the instruction of LWC employees, Ms. Plaisance has never received

UC benefits, any written notice regarding her claims, or an opportunity to appeal the determinations of ineligibility. *Id.* at ¶¶ 50-52.

Frederick Bass worked as a plant worker, but was laid off due to the COVID-19 pandemic in April 2020. *Id.* at ¶ 54. Soon after, he filed for unemployment compensation and was approved for PUA. *Id* at ¶ 55. In or around August 2020, Mr. Bass called the LWC because he was unable to access his weekly claim certification in the online portal. *Id* at ¶¶ 56-57. He spoke with a representative who instructed him to file a new claim, or he would be permanently ineligible for benefits moving forward. *Id* at ¶ 57. After Mr. Bass filed a new claim, the LWC processed his new claim as State UC instead of PUA benefits and classified his previous claims as "overpayment." *Id* at ¶¶ 58-60.

On January 7, 2021, Mr. Bass received a notice that his claims were reclassified as PUA benefits. *Id* at ¶ 61. But on January 8, 2021 he received a received another "overpayment" notice. *Id.* He attempted to submit an appeal, but was unable to access the online system to do so. *Id.* at ¶ 62. Mr. Bass called the LWC and was unable to speak with a representative on multiple occasions. *Id.* at ¶ 63. Since August 2020, Mr. Bass has not received unemployment benefits, nor has he received an explanation of why his claims were characterized as overpayments, or been afforded the opportunity to appeal the overpayment determination. *Id.* at ¶¶ 64-65.

Amanda Coleman worked a healthcare provider until she was laid off due to the COVID-19 pandemic in March 2020. *Id.* at ¶ 67. Ms. Coleman filed for unemployment compensation in or around May 2020. *Id.* at ¶ 69. She was approved for and began receiving UC benefits. *Id.*

Ms. Coleman submitted regular weekly certifications and received benefits through December 2020. *Id.* at ¶ 71. In January 2021, Ms. Coleman received an overpayment determination notice from the Commission. *Id.* at ¶ 73. She promptly filed an appeal, and on

February 10, 2021, received a notice acknowledging her appeal and informing her that "an appeal hearing will be scheduled within the near future." *Id.* at ¶ 74.

At the time of this filing, more than 60 days after making a request for an administrative review, Ms. Coleman has not had her appeal hearing. *Id.* at ¶ 75. Additionally, her online account currently notes that she is "disqualified" from receiving benefits on her claim. *Id.* at ¶ 77. Ms. Coleman continues to file weekly claim certifications, but she has not received benefits since January 2021. *Id.* at ¶¶ 76, 78. She was never given a reason for the termination of her benefits, or an opportunity to rebut the discontinuance of her benefits before they were terminated. Nor has she been able to access the administrative review she sought from the agency.

Steven Strick was self-employed and worked in construction, primarily on remodeling homes. *Id.* at ¶ 80. Because of the COVID-19 pandemic, Mr. Strick found himself unable to work and he began receiving PUA in 2020. *Id.* at ¶¶ 80-81. Later in 2020, Mr. Strick received overpayment determinations from the LWC for benefits received because he was deemed ineligible for PUA during the relevant time frame. *Id.* at ¶ 82. He submitted an appeal, but later received additional overpayment determination notices. *Id.* at ¶¶ 83-84. LWC disqualified Mr. Strick because he hadn't appealed the additional overpayment determinations. *Id.* at ¶ 86.

Mr. Strick spoke with an LWC representative in an attempt to resolve his overpayment issue. *Id.* at ¶ 87. He provided them with the information necessary to prove that he had been eligible to receive PUA benefits in 2020. *Id.* An LWC representative subsequently informed Mr. Strick that his issues had been resolved and that he was again eligible for unemployment. *Id.* However, Mr. Strick has not received any UC benefits since the overpayment determination. *Id.* at ¶ 88. He has continued to file weekly certifications. *Id.*

William Grieshaber worked as an assistant manager at a restaurant for approximately seven years. *Id.* at ¶¶ 90, 93. He was laid off as a result of COVID-19. *Id.* at ¶ 90. He then filed for unemployment compensation and began receiving benefits. *Id.* In January 2021, Mr. Grieshaber began to receive letters from the LWC that stated that he had been overpaid and assessing a debt against him of $18,000. *Id.* at ¶ 91. The reason given was that he had left his previous employment to take another job. *Id.* at ¶ 92. Mr. Grieshaber has attempted to speak with LWC representatives to resolve his issue. *Id.* at ¶ 95. They suggested that he request a waiver, which would require him to provide evidence of finances and other information and to verify that he would not have accepted funds had he known he was ineligible to receive them. *Id.*

## IV. ARGUMENT

Class certification is appropriate where the threshold requirements of Rule 23(a) and any of the requirements of subsections (b) (1), (2), *or* (3) are satisfied. Fed. R. Civ. P. 23; *see also Maldonado v. Ochsner Clinic Found*., 493 F.3d 521, 523 (5th Cir. 2007) (citing *Amchem Prods., Inc. v. Windsor,* 521 U.S. 591, 614 (1997)).  "By its terms [Rule 23] creates a categorical rule entitling a plaintiff whose suit meets the specified criteria to pursue his claim as a class action." *Teta v. Chow (In Re TWL Corp.)*, 712 F.3d 886, 894 (5th Cir. 2013) (brackets in original) (quoting *Shady Grove Orthopedic Assocs., P.A. v. Allstate Ins. Co*., 559 U.S. 393, 398 (2010)).

While a district court must engage in a rigorous analysis of Rule 23's requirements, courts have "substantial discretion" when deciding a motion for class certification. *See Allison v. Citgo Petroleum Corp*., 151 F.3d 402, 408 (5th Cir. 1998) (citing *Jenkins v. Raymark Indus.*, 782 F.2d 468, 471-72 (5th Cir. 1986)). In its analysis, the court need not fully evaluate the merits of the plaintiffs' claims at the certification stage but may permissibly look past the pleadings to the record and any other completed discovery when deciding whether a class should be certified.

*See Eisen v. Carlisle & Jacquelin*, 417 U.S. 156, 177–78 (1974); *Ward v. Hellerstedt*, 753 F. App'x 236, 244 (5th Cir. 2018) ("However, merits questions may only be considered to the extent 'that they are relevant to determining whether the Rule 23 prerequisites are satisfied.'") (citing *Amgen Inc. v. Ret. Plans & Tr. Funds*, 568 U.S. 455, 466 (2013)). The court should seek to "'understand the claims, defenses, relevant facts, and applicable substantive law in order to make a meaningful determination[.]'" *Chavez v. Plan Benefit Servs., Inc.,* 957 F.3d 542, 546 (5th Cir. 2020) (citing *Flecha v. Medicredit, Inc.*, 946 F.3d 762, 766 (5th Cir. 2020)).

Courts have previously certified similar classes in class actions concerning unemployment compensation and other government benefits programs. *See, e.g.*, *Ibarra v. Texas Employment Com*., 598 F. Supp. 104 (E.D. Tex. 1984) (certifying a class of "all past, present, and future individuals who have been denied unemployment benefits in Texas because of their inability to produce INS work authorization"); *Garnett v. Zeilinger,* 301 F. Supp. 3d 199, 212 (D.D.C. 2018) (certifying 2 classes comprised of applicants and recipients for the Supplemental Nutrition Assistance Program subjected to untimely processing); *Reynolds v. Giuliani,* 118 F. Supp. 2d 352, 392 (S.D.N.Y. 2000) (certifying a class of "all New York City residents who have sought, are seeking, or will seek to apply for food stamps, Medicaid, and/or cash assistance at a Job Center."). Here, Plaintiffs' proposed classes meet the requirements of Rules 23(a) and (b)(2).

**A. The Proposed Classes meet the Requirements of Rule 23(a).**

**1. The Members of the Class and Sub-classes are so Numerous that Joinder of all Members is Impracticable.**

Rule 23(a)(1) requires that the class be so numerous that joinder of individual members into one suit is impracticable. In evaluating the numerosity element, "[t]he primary consideration for courts is the practicality of joining the members of a proposed class." *Pitts v. Greenstein*, No.

10–635–JJB–SR, 2011 WL 2193398, at *3 (M.D. La. June 6, 2011) (citing *Zeidman v. J. Ray McDermott & Co.,* 651 F.2d 1030, 1038 (5th Cir.1981)).

The Court considers several factors in assessing "practicality," including "the sheer size of the class and whether the class will include future members." *Pitts*, 2011 WL 2193398, at *3 (citing *Ziedman*, 651 F.2d at 1039). "The proper focus is not on numbers alone, but on whether joinder of all members is practicable in view of the numerosity of the class and all other relevant factors." *Phillips v. Joint Legislative Comm.*, 637 F.2d 1014, 1022 (5th Cir. 1981). "Although there is no strict threshold, classes containing more than 40 members are generally large enough to warrant certification." *Lewis v. Cain,* 324 F.R.D. 159, 168 (M.D. La. 2018) (citing *Briggs v. Dunn*, 321 F.R.D. 653, 661 (M.D. Ala. 2017) (granting class certification in a prison conditions class action alleging, among other claims, a violation of Title II and Section 504). The Fifth Circuit has suggested that "any class consisting of more than forty members 'should raise a presumption that joinder is impracticable.'" *Mullen v. Treasure Chest Casino, LLC*, 186 F.3d 620, 624 (5th Cir. 1999) (citing 1 Newberg on Class actions § 3.05 at 3–25 (3d ed.1992)).

In this case, the proposed Plaintiff class is comprised of thousands of unemployed residents of the State of Louisiana. While not every applicant or recipient for UC will be a class member, many will. Data from a search for the claims during the 2021 year, conducted via the United States Department of Labor's website, indicate that more than 120,000 new claims for UC were submitted to LWC in the just the first quarter of 2021. U.S. Dep't of labor, *Unemployment Insurance Weekly Claims Data – Report r539cy*, https://oui.doleta.gov/unemploy/wkclaims/report.asp (last visited April 29, 2021). This is approximately one quarter of the time period encompassed within the proposed definition of the plaintiff class. Moreover, in this same time period, Defendant Dejoie publicly acknowledged to

the Louisiana Legislature the UC processing backlog at LWC.  She acknowledged that more than 30,000 cases that had been handled, but 20,00 cases remained. *Some Louisianans Still Not Seeing Unemployment Benefits*, (Mar. 13, 2021, 9:24 PM), https://www.katc.com/news/some-louisianans-still-not-seeing-unemployment-benefits (last visited on April 29, 2021). Moreover, Department of Labor data further indicate that only a handful of Louisianans are able to obtain administrative hearings through LWC. Data compiled by the federal Department of Labor that are detailed in the accompanying Attorney Declaration in support of class certification indicate that in February 2021, a mere 1% of lower level hearings were completed within 30 days and 1.5% within 45 days of the claimant's request.  In the month of March 2021, 2.1% of lower level hearings were completed within 30 days, and 3.5% within 45 days. Akhtar Decl ¶¶ 18,19. The data indicate that the significant majority of UC claimants who seek any kind of administrative review of their case are unable to secure the due process provided by LWC in the time frames anticipated by the Department of Labor.  *See* Standard for Appeals Promptness—Unemployment Compensation, 20 C.F. R. § 650.4(b) (2021).[6] The number of individuals suffering delay and inability to access UC benefits undoubtedly meets the minimum threshold for class certification. The Class and included Subclasses therefore meet the threshold numerical requisite for a federal class action.

That joinder is impracticable here is further supported by the presence of future class members, as people are continually applying for unemployment insurance in Louisiana, and they will all be subject to Defendants' customs, practices, policies and procedures. Courts have

---

[6] "A state will be deemed to comply substantially with the State law requirements set forth in § 650.3(a) with respect to first level appeals, the State has issued at least 60 percent of all first level benefit appeal decisions within 30 days of the date of appeal, and at least 80 percent of all first level benefit appeal decisions within 45 days."

repeatedly recognized that the existence of unknown future members supports class certification. *See Phillips* 637 F.2d at 1022 (finding that "joinder of unknown individuals is 'certainly impracticable.'") (citing *Jack v. American Linen Supply Co.*, 498 F.2d 122, 124 (5th Cir. 1974); *see also Cain*, 324 F.R.D. at 168 ("the fluid nature of a plaintiff class . . . counsels in favor of certification of all present and future members"); *Pitts*, 2011 WL 2193398, at *4 (". . . there are countless potential future members of the class who have not yet qualified for [the Medicaid service] who may wish to preserve their rights.").

Consideration of the impracticability of joinder is also given to intertwining factors including (a) the ease of identification of class members, *see Garcia v. Gloor*, 618 F.2d 264, 267 (5th Cir. 1980), (b) whether the "class members lack the financial resources necessary to bring suit individually in order to vindicate their rights" *Pitts*, 2011 WL 2193398, at *4 (finding class of Louisiana Medicaid-eligible persons with disabilities seeking personal care services to "lack the financial resources necessary to bring suit individually in order to vindicate their rights" and holding that the "numerosity" requirement is satisfied.), and (c) the geographical dispersion of the class. *Id.* at 3 .

Given that the proposed Classes consists of thousands of applicants and recipients of UC in Louisiana since March 13, 2020 during COVID-19 who are not currently receiving their benefits, the expedited processing of class members' claims would be in line with the purpose of Louisiana's unemployment system. *See* La. R.S. § 23:1471 ("Economic insecurity due to unemployment is a serious menace to the health, morals and welfare of the people of this state. Unemployment is therefore a subject of general interest and concern which requires appropriate action by the Legislature to prevent its spread and to lighten its burden..."); *see also Pitts*, 2011 WL 2193398, at *4. Given the size of the proposed Classes, certification will also promote judicial

economy. *See*, *In re TWL Corp.*, 712 F.3d at 894 (Fifth Circuit explaining that courts also consider the "judicial economy arising from the avoidance of a multiplicity of actions.") (citing WILLIAM B. RUBENSTEIN, 1 NEWBERG ON CLASS ACTIONS § 3:12 (5th ed. 2012).

## 2. There are Questions of Law and Fact Common to the Classes.

Rule 23(a)(2) requires that there be "questions of law or fact common to the class" in order to establish class certification. Plaintiffs' claims "must depend upon a common contention . . . of such a nature that it is capable of classwide resolution–which means that determination of its truth or falsity will resolve an issue that is central to the validity of each one of the claims in one stroke." *Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 350 (2011). "The commonality test is met when there is at least one issue, the resolution of which will affect all or a significant number of the putative class members." *Lightbourn v. Co. of El Paso,* 118 F.3d 421, 426 (5th Cir. 1997) (citation omitted). "What is significant with respect to a commonality determination is...'the capacity of a class-wide proceeding to generate common answers apt to drive the resolution of the litigation.'" *Ward*, 753 F. App'x at 245 (citing *Yates v. Collier*, 868 F.3d 354, 359 (5th Cir. 2017). "Even a single common question of law or fact can suffice to establish commonality … so long as resolution of that question 'will resolve an issue that is central to the validity of each one of the [class member's] claims in one stroke." *Ibe v. Jones*, 836 F.3d 516, 528 (5th Cir. 2016) (citing *Dukes*, 564 U.S. at 350, 359).

A common question is one which, when answered as to one class member, is answered as to all. "Even where individual class members may not be identically situated, commonality exists where a question of law linking class members is substantially related to the resolution of the litigation." *Lane v. Campus Fed. Credit Union*, No. 16-CV-37-JWD-EWD, 2017 WL 3719976, at *4 (M.D. La. May 16, 2017) (citing *M.D. ex rel. Stukenberg v. Perry*, 675 F.3d 832, 839-40 (5th

Cir. 2012)). "[T]he only consideration at the class certification stage is whether the issues are appropriate for class-wide litigation," not whether the plaintiffs will win on the merits. *Dockery v. Fischer*, 253 F. Supp. 3d 832, 846 (S.D. Miss. 2015) (citations omitted). *See also In re Deepwater Horizon*, 739 F.3d 790, 811 (5th Cir. 2014) ("'common answers' may indeed relate to the injurious effects experienced by the class members, but they may also relate to the defendant's injurious conduct.") (citing *M.D. ex rel. Stukenberg,* 675 F.3d at 840).

Commonality is routinely found to be satisfied where, as here, class members' injuries "derive from a unitary course of conduct by a single system." *Marisol A. by Forbes v. Giuliani*, 126 F.3d 372, 376-77 (2d Cir. 1997); *see also Garnett* 301 F.Supp.3d at 206-209 (finding the commonality requirement satisfied for class of SNAP recipients relating to processing delays and adequate notice); *Leiting-Hall v. Winterer*, No. 4:14-CV-3155, 2015 WL 1470459, at *5-*7 (D.Neb. Mar. 31, 2015) (finding commonality satisfied for a class of SNAP recipients facing processing delays, and collecting cases); Akhtar Decl. Ex. D, E (form notice sent to all claimants against whom a given action has been taken). Here, Plaintiffs and proposed class members injuries all derive from Defendants' policies, practices, and procedures, or lack or deficiencies thereof in their administration of the Louisiana unemployment insurance system.

**Questions of law and fact common to the Class as a whole include:**

a.  Whether Defendants' current customs, policies, patterns and practices violate the Due Process Clause of the Fourteenth Amendment by failing to afford Named Plaintiffs and putative class members access to the UC benefits for which they are eligible;

b. Whether Defendants' existing policies, patterns and practices are sufficient to secure claimants' access to their UC benefits when they are due; and provide adequate, legally required procedural protections for these vital benefits;

c. Whether Defendants' policies, patterns, and practices violate the requirement under 42 U.S.C. § 503(a)(1) that unemployment compensation be paid "when due."

**Questions of law and fact common to the Denial of Benefits Subclass include:**

a. Whether Defendants' current customs, policies, patterns and practices violate 42 U.S.C. § 503(a)(1) by failing to afford Named Plaintiffs and putative class members access to the UC benefits for which they are eligible when due;

b. Whether Defendants' customs, policies, patterns and practices deprive claimants of their ability to timely appeal a denial of benefits by failing to provide and an adequate and/or timely written decision of their eligibility for benefits; and

c. Whether Defendants' customs, policies, patterns, and practices of failing to provide notice of eligibility determination or denial of a UC claim comports with the Due Process Clause of the Fourteenth Amendment.

**Questions of law and fact common to the Termination of Benefits Subclass include:**

a. Whether Defendant's current termination notices comport with Louisiana statutory requirements to identify the reason for the termination;

b. Whether Defendant's customs, policies, patterns and practices deprive claimants of termination notices stating the specific and precise basis for the termination;

c.   Whether Defendant's pattern and practice of issuing unemployment termination notices concurrent with or after benefits are terminated comports with the Due Process Clause of the Fourteenth Amendment;

d.   Whether Defendant's pattern and practice of issuing unemployment termination notices concurrent with or after benefits are terminated deprives claimants of a meaningful opportunity to dispute the termination and seek administrative review of the LWC's adverse decision;

e.   Whether Defendant's existing pattern and practice of grossly delayed administrative action necessitates pre-termination hearings to ensure meaningful access to administrative review by unemployment claimants pursuant to the Due Process Clause of the Fourteenth Amendment;

f.   Whether Defendant's existing policies, patterns and practices can provide a legally sufficient opportunity to be heard and adequate protection of UC benefits pursuant to the Due Process Clause of the Fourteenth Amendment.

These common questions of law and fact call into question Defendant's procedures as they apply to all members of each class.

Plaintiffs' claims "depend upon...common contention[s] . . . that [are] capable of class wide resolution." *Dukes*, 564 U.S. at 350. Here, Plaintiffs seek an injunction requiring Defendants to ensure timely processing of unemployment compensation claims and appeals; and provide claimants with timely and adequate notice regarding denials, suspensions, and terminations of unemployment compensation. Plaintiffs have met their burden to demonstrate that commonality exists among the Class.

**3.  The Claims of the Named Plaintiffs are Typical.**

Rule 23(a)(3) requires that "the claims or defenses of the representative parties are typical of the claims or defenses of the class." Typicality "focuses on the similarity between the named plaintiffs' legal and remedial theories and the theories of those whom they purport to represent." *Mullen*, 186 F.3d at 625 (citing *Lightbourn*, 118 F.3d at 426). The typicality and commonality requirements tend to merge as both are guideposts determining whether a class action is economical and whether the named plaintiffs' claims are so interrelated that the interests of the class members will be fairly and adequately protected in their absence. *Dukes*, 564 U.S. at 349 n.5. Courts frequently find typicality to have been satisfied in cases relating to government benefits in which the named plaintiffs have suffered the same deprivation as the class members. *See, e.g.*, *Marisol A.,* 126 F.3d at 376-77; *Garnett*, 301 F.Supp.3d at 209-10; *Leiting-Hall,* 2015 WL 1470459 at *6-*7.

Brooke Plaisance has been waiting for over a year for a determination regarding her application for unemployment compensation. Like the members of the putative subclass she represents, Ms. Plaisance is suffering an ongoing deprivation of her procedural due process rights as a result of Defendants' policies and practices, and she has been denied unemployment compensation and notice, including of her right to appeal, regarding her claim.

The Named Plaintiffs representing the putative Termination of Benefits Subclass are likewise all suffering ongoing deprivations of their procedural due process rights as a result of Defendants' policies and procedures. Frederick Bass has been disqualified from receiving unemployment compensation due to an alleged overpayment for more than seven months, and has not been given an opportunity to appeal. Amanda Coleman filed an appeal of an overpayment determination in February 2021, and is still waiting for an opportunity to be heard and a chance to have her benefits restored. Steven Strick has not been provided with unemployment compensation

benefits following an overpayment determination, despite following all instructions from the LWC and being informed by LWC staff that he is eligible. William Grieshaber is subject to an overpayment determination, and has not been given an adequate opportunity to appeal. All four of the Termination of Benefits Subclass Named Plaintiffs have been deprived of due process of law during and after the termination of their unemployment compensation benefits.

All five Named Plaintiffs, as well as the class and subclasses, seek an injunction ordering Defendants to ensure timely processing of unemployment compensation claims and appeals; and provide claimants with timely and adequate notice regarding denials, suspensions, and terminations of unemployment compensation. The claims and remedies asserted by the Plaintiffs are typical of the claims and remedies asserted by the proposed class members.

**4. The Named Plaintiffs and Class Counsel Will Fairly and Adequately Protect the Interests of the Proposed Class and Sub-Classes.**

Rule 23(a)(4) requires that "the representative parties will fairly and adequately protect the interests of the class." The adequacy determination requires an inquiry into: (a) "'the willingness and ability of the representative[s] to take an active role in and control the litigation and to protect the interests of the absentees'"; and (b) the "'zeal and competence of the representatives' counsel.'" *Feder v. Electronic Data Systems Corp.*, 429 F.3d 125, 130 (5th Cir. 2005) (quoting *Berger v. Compaq Computer Corp.*, 257 F.3d 475, 479 (5th Cir. 2001)).

Plaintiffs are adequate representatives of the Class. All have expressed a willingness and ability to actively participate in the litigation and to protect the interests of the Class. Plaintiffs actively share the interests of the Class in advocating for the proper administration of the Louisiana Unemployment Insurance program.

The same relief sought by Named Plaintiffs would similarly benefit other unemployment applicants throughout the state who have also faced delays in receiving benefits, had benefits terminated, and been deprived of adequate notice and opportunity for hearing—all in violation of their due process rights and in violation of the "when due" clause.  *See Hays v. Eaton Group Attorneys, LLC*, No. 17-88-JWD-RLB, 2019 WL 427331, at *4 (M.D. La. Feb. 4, 2019) (finding that plaintiff met adequacy requirement because she is "part of the class and possess[es] the same interest and suffer[ed]the same injury as class members.") (quoting *Amchem Prods., Inc.*, 521 U.S. at 594-95).

Counsel for Plaintiffs, the National Center for Law and Economic Justice and the Manard Firm (collectively, "Proposed Class Counsel"), are also adequate Class representatives. NCLEJ has extensive experience litigating complex, federal class action lawsuits against government defendants under Rule 23(b)(2).  The Manard Firm has years of litigation experience in Louisiana.

Finally, when a class is certified, the court must appoint class counsel.  In appointing class counsel, this Court must consider: (i) the work counsel has done in identifying or investigating potential claims in the action; (ii) counsel's experience in handling class actions, other complex litigation, and the types of claims asserted in the action; (iii) counsel's knowledge of the applicable law; and (iv) the resources that counsel will commit to representing the class. Fed. R. Civ. P. 23(g)(1)(A)(i-iv). For the same reasons that counsel for Plaintiffs are adequate representatives of the Class, Plaintiffs' counsel are qualified to serve as counsel for the Class.

Accordingly, Plaintiffs and counsel for Plaintiffs are able to provide legally adequate representation of the Class and should be appointed to represent the class.

**B.  The Putative Class Satisfies the Requirements of Rule 23(b)(2).**

Plaintiffs seek certification under Rule 23(b)(2). Class certification is appropriate under this subsection of Rule 23(b) if the defendant has "acted or refused to act on grounds that apply generally to the class, so that final injunctive relief or corresponding declaratory relief is appropriate respecting the class as a whole." Fed. R. Civ. P. 23(b)(2).

When analyzing Rule 23(b)(2), the Fifth Circuit looks to whether (1) class members have been harmed in essentially the same way; (2) whether the injunctive relief [predominates] over monetary damage claims; and (3) whether the injunctive relief sought [is] specific. *See Yates*, 868 F.3d at 366 (citations and quotations omitted). If a "single injunction or declaratory judgment can provide relief to each member of the class," then Rule 23(b)(2) is met. *Dukes*, 564 U.S. at 360. Indeed, a "[Rule] 23(b)(2) class action suit is an effective weapon for an across-the-board attack against systemic abuse." *Jones v. Diamond*, 519 F.2d 1090, 1100 (5th Cir. 1975).

The proposed class and subclasses meet all three elements of Rule 23(b)(2). Defendants operate their unemployment compensation program in a manner that deprives class members of unemployment compensation without due process. Defendants fail to provide timely unemployment compensation benefits and timely appeals, and fail to provide timely and adequate notice to class members throughout the life of their unemployment claims. The class members are subject to "systemic abuse" by Louisiana's unemployment system.

Plaintiffs "seek relief for the entire class based on policies and practices by Defendants that affect the class equally." *Valentine v. Collier*, No. 4:20-CV-1115, 2020 WL 3491999 at *13 (S.D. Tex. Jun. 27, 2020) (finding the plaintiffs' requested classwide injunctive relief, in response to the defendants' policies and practices was "clear and specific" enough to approve). The class seeks reform via injunctive relief of a broken government system that harms all members, and all class

members will benefit from an order remedying Defendants' unconstitutional and illegal policies and practices.

Finally, the injunctive relief sought by Plaintiffs and the class is sufficiently specific and can be achieved with an order requiring Defendants to ensure processing of unemployment compensation claims and appeals. The requested injunction can also provide claimants with (detailed?) notice regarding denials, suspensions, and terminations of unemployment compensation. To be sure, "Rule 23(b)(2) does not require that every jot and tittle of injunctive relief be spelled out at the class certification stage; It requires only 'reasonable detail' as to the 'acts required.'" *Yates*, 868 F.3d at 368 (quoting *M.D. ex rel. Stukenberg*, 675 F.3d at 848).

This case fits well within a Rule 23(b)(2) action. Defendants' illegal policies, practices, and omissions affect all members of the Class, including Plaintiffs, and the remedy for Defendants' illegal conduct is well-suited for and requires declaratory and injunctive relief. Indeed, it is commonplace for courts to certify classes under Rule 23(b)(2) in cases where government benefits recipients seek to enforce their due process rights. *See Doe by Doe v. Chiles*, 136 F.3d 709, 712 (11th Cir. 1998); *Marisol A.,* 126 F.3d at 378; *Garnett*, 301 F. Supp. at 203-04; *Barry v. Corrigan*, 79 F. Supp. 3d 712, 728-33 (E.D. Mich. 2015).

In the instant case, Plaintiffs claim that Defendants failed to properly administer Louisiana's unemployment insurance programs in violation of the Due Process clause and the "when due" requirement of 42 U.S.C. § 503(a)(1). The harms, claims, and remedies recited by Plaintiffs are similar to those that other courts have found sufficient to meet the requirements of Rule 23(b)(2). In keeping with this precedent, Plaintiffs have satisfied the requirements of Rule 23(b)(2).

### C. The Proposed Classes are Ascertainable.

Ascertainability is an "implied prerequisite" of Federal Rule of Civil Procedure 23, which governs class actions. *John v. Nat'l Sec. Fire and Cas. Co.*, 501 F.3d 443, 445 (5th Cir. 2007). "[I]n order to maintain a class action, the class sought to be represented must be adequately defined and clearly ascertainable." *In re Deepwater Horizon*, 739 F.3d at 821 (quoting *Union Asset Mgmt. Holding A.G. v. Dell, Inc.*, 669 F.3d 632, 639 (5th Cir. 2012)). There is not, however, a requirement that the court "know the identity of each class member before certification," as "ascertainability requires only that the court be able to identify class members at some stage of the proceeding." *Seeligson v. Devon Energy Prod. Co., L.P.*, 761 Fed. Appx. 329, 333 (5th Cir. 2019) (citing *Frey v. First Nat. Bank Sw.*, 602 F. App'x 164, 168 (5th Cir. 2015) (unpublished) (quoting William B. Rubenstein, NEWBERG ON CLASS ACTIONS § 3:3 (5th ed. 2011)).[7]

Plaintiffs seek to certify a class of applicants and recipients of benefits administered by Defendants, utilizing a specific class definition whose membership can objectively be

---

[7] Courts outside of the Fifth Circuit have found that a precise class definition is either unnecessary or less critical where certification is sought under Rule 23(b)(2). *See Cole v. City of Memphis*, 839 F.3d 530, 542 (6th Cir. 2016) ("ascertainability is not an additional requirement for certification of a (b)(2) class seeking only injunctive and declaratory relief"); *Shelton v. Bledsoe*, 775 F.3d 554, 563 (3d Cir. 2015) ("The nature of Rule 23(b)(2) actions, the Advisory Committee's note on (b)(2) actions, and the practice of many of other federal courts all lead us to conclude that ascertainability is not a requirement for certification of a (b)(2) class seeking only injunctive and declaratory relief"); *Shook v. El Paso Cty.*, 386 F.3d 963, 972 (10th Cir. 2004) (ascertainability is not required for a (b)(2) class action, as the composition of the class in such cases often is not readily ascertainable – *e.g.*, where plaintiffs attempt to bring suit on behalf of a shifting prison population); *Yaffe v. Powers*, 454 F.2d 1362, 1366 (1st Cir. 1972) ("notice to the members of a (b)(2) class is not required and the actual membership of the class need not therefore be precisely delimited"); *see also* Fed. R. Civ. P. 23 advisory committee's note to 1966 amendment (illustrative examples of a Rule 23(b)(2) class "are various actions in the civil-rights field where a party is charged with discriminating unlawfully against a class, *usually one whose members are incapable of specific enumeration*") (emphasis added). While the Fifth Circuit has noted decisions from other courts, it has not decided the issue. *See In re Monumental Life Ins. Co.*, 365 F.3d 408, 413 (5th Cir. 2004).

determined through consulting Defendants' records.  Defendants' records and systems log

various actions on any given claim for unemployment compensation, including when an

application for unemployment compensation is submitted, whether and when benefits are paid

out, whether a determination has been made on a claim, whether an appeal has been requested or

scheduled, and whether an appeal hearing has taken place.  *See* Compl. ¶¶ 62, 75, 90, 93, 99;

Akhtar Decl. ¶¶ 16, 18, 19.

## VI.    CONCLUSION

For the foregoing reasons, Plaintiffs respectfully request that the Court grant the Motion

for Class Certification under Federal Rule of Civil Procedure 23. Further, Plaintiffs respectfully

request this Court appoint Proposed Class Counsel as counsel to represent the certified class.

Respectfully submitted,

*/s/ Ellyn J. Clevenger*
Ellyn J. Clevenger (#32395)
Wendy Manard (#29622)
Manard Law
1100 Poydras Street, Suite 2610
New Orleans, LA 70163
Telephone: (504) 585-7777
Fax: (504) 556-2977
wendy@wmanard.com
ellyn@wmanard.com
ATTORNEYS FOR PLAINTIFFS

*/s/ Saima A. Akhtar*
Saima A. Akhtar
(NY Bar Roll # 4661237)
National Center for Law and
Economic Justice
275 Seventh Avenue, Suite 1506
New York, NY 10001
Telephone: (212) 633-6967
Fax: (212) 633-6371
akhtar@nclej.org
ATTORNEYS FOR PLAINTIFFS