IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF LOUISIANA

| | |
|---|---|
| BROOKE PLAISANCE, FREDERICK BASS, AMANDA COLEMAN, STEPHEN STRICK, AND WILIAM GRIESHABER, on behalf of themselves and those similarly situated,<br><br>*Plaintiffs*,<br><br>v.<br><br>STATE OF LOUISIANA; LOUISIANA WORKFORCE COMMISSION; AVA M. DEJOIE, in her official capacity as Secretary of the Louisiana Workforce Commission; AND JOHN BEL EDWARDS, in his official capacity as chief executive officer of the State of Louisiana,<br><br>*Defendants*. | **Civil Action No.: 3:21-CV-121-BAJ-EWD**<br><br>**Judge: BRIAN A. JACKSON**<br><br>**Magistrate: ERIN WILDER-DOOMES** |

## COMBINED MEMORANDUM OF LAW IN OPPOSITION TO DEFENDANTS DEJOIE AND LOUISIANA WORKFORCE COMMISSION AND DEFENDANT EDWARDS MOTIONS TO DISMISS

Ellyn J. Clevenger
Wendy Manard
Manard Law

Saima A. Akhtar
National Center for Law and Economic Justice
ATTORNEYS FOR PLAINTIFFS

# **TABLE OF CONTENTS**

I.   INTRODUCTION ........................................................................................................... 1

II.   STANDARD OF REVIEW ............................................................................................. 2

III.   ARGUMENT ................................................................................................................... 4

   a.   The Court has Subject Matter Jurisdiction over Plaintiffs Claims ....................... 4

   b.   Plaintiffs have Stated a Claim Upon Which Relief Can be Granted .................... 8

      i.   Secretary DeJoie and Governor Edwards are "Persons" under 42 U.S.C § 1983. .. 8

      ii.   Plaintiffs have made sufficient allegations against Governor Edwards .................... 8

      iii.   Plaintiffs have suffered, and continue to suffer, irreparable harm, and Plaintiffs' claims as to 42 U.S.C § 1983, the Fourteenth Amendment, and 42 U.S.C. § 503 (a)(1) are subject to injunctive relief. ......................................................................... 9

      iv.   Injunctions are routinely issued against state officials for enacting policies and practices that violate federal law. ................................................................................ 10

IV.   CONCLUSION .............................................................................................................. 13

# TABLE OF AUTHORITIES

## Cases

*Alden v. Maine*, 527 U.S. 706 (1999) ....................................................................................... 12
*Ashcroft v. Iqbal*, 556 U.S. 662 (2009) .................................................................................... 3, 4
*Bell Atl. Corp. v. Twombly*, 550 U.S. 544 (2007) .................................................................... 4, 8
*Booth v. McManaman*, 830 F. Supp. 2d 1037 (D. Haw. 2011) .................................................. 7
*Chaney v. Louisiana Work Force Com'n*, 560 Fed. Appx. 417 (5th Cir. 2014) ........................... 7
*City of Austin v. Paxton*, 943 F.3d 993 (5th Cir. 2019) .......................................................... 5, 11
*Club Retro, L.L.C. v. Hilton*, 568 F.3d 181 (5th Cir. 2009) ........................................................ 4
*Covington v. City of Madisonville, Texas*, 812 Fed. Appx 219 (5th Cir. 2020) .......................... 4
*Elsey v. Sullivan*, No. 12–332–BAJ–SCR, 2013 WL 2368867 (M.D. La. May 29, 2013) .... 3, 4, 8
*Erickson v. Pardus*, 551 U.S. 89 (2007) ..................................................................................... 3
*Ex parte Young*, 209 U.S. 123 (1908) ................................................................................. passim
*Ganther v. Ingle*, 75 F.3d 207 (5th Cir. 1996) ........................................................................... 10
*Garnett v. Zeilinger*, 313 F. Supp. 3d 147 (D.D.C. 2018) ................................................... 11, 13
*Green Valley Special Utility District v. City of Schertz, Texas*, 969 F.3d 460 (5th Cir. 2020) ...... 5
*Hernandez v. Sessions*, 872 F.3d 976 (9th Cir. 2017) ............................................................... 10
*Hiltibran, et al., v. Levy, et al.*, 793 F. Supp. 2d 1108 (W.D. Mo. 2011) .................................... 13
*Home Builders Ass'n, Inc. v. City of Madison*, 143 F.3d 1006 (5th Cir. 1998) ........................... 3
*In re FEMA Trailer Formaldehyde Products Liability Litigation (Mississippi Plaintiffs)*, 688 F.3d 281 (5th Cir. 2012) .......................................................................................................... 3
*In re So. Scrap Material Co.*, 541 F.3d 584 (5th Cir. 2008) ....................................................... 3
*Jones v. Texas Juvenile Justice Dept.*, 646 Fed. Appx. 374 (5th Cir. 2016) .............................. 10
*Kentucky v. Graham*, 473 U.S. 159 (1985) ................................................................................. 8
*McCarthy ex rel. Travis v. Hawkins*, 381 F.3d 407 (5th Cir. 2004) ..................................... 11, 12
*McLin v. Ard*, 866 F.3d 682 (5th Cir. 2017) ............................................................................... 4
*Melendres v. Arpaio*, 695 F.3d 990 (9th Cir. 2012) .................................................................. 10
*Milon v. LeBlanc*, No. 19-00717-BAJ-RLB, 2020 WL 6276953 (M.D. La. Oct. 26, 2020) .......... 3
*Morgan v. Hubert*, 335 Fed App'x 466 (5th Cir. 2009) ............................................................. 3
*Morris v. Livingston*, 739 F.3d 740 (5th Cir. 2014) .................................................................. 11
*Oppenheimer v. Prudential Securities Inc.*, 94 F.3d 189 (5th Cir. 1996) ................................... 3
*Papasan v. Allain*, 478 U.S. 265 (1986) ................................................................................. 3, 7
*Pechon v. Louisiana State Department of Health and Hospitals*, No. CV-08-0664, 2009 WL 10680168 (E.D. La. Jan. 15, 2009) ......................................................................................... 12
*Planned Parenthood Gulf Coast, Inc. v. Kliebert*, 141 F. Supp. 3d 604 (M.D. La. 2015) ........... 13
*Quern v. Jordan*, 440 U.S. 332, 337, (1979) ............................................................................ 12
*Ramming v. U.S.*, 281 F.3d 158 (5th Cir. 2001) ........................................................................ 3
*Robertson v. Jackson*, 766 F. Supp. 470 (E.D. Va. 1991) .............................................. 7, 11, 13
*Robidoux v. Kitchel*, 876 F. Supp. 575 (D. Vt. 1995) ................................................................. 7
*Shifflett v. Kozlowski*, 843 F. Supp. 133 (W.D. Va. 1994) ......................................................... 7
*Springtree Apartments, ALPIC v. Livingston Parish Council*, 207 F. Supp. 2d 507 (M.D. La. 2001) ........................................................................................................................................ 10

*Stroebel v. Rainwater*, 742 F. Supp. 2d (E.D. La. 2010) .............................................................. 7
*Valentine v. Collier*, 993 F.3d 270 (5th Cir. 2021) ...................................................................... 8
*Verizon Maryland, Inc. v. Public Serv. Comm'n*, 535 U.S. 635 (2002) ........................................ 4
*Verizon Maryland, Inc. v. Public Service Com'n of Maryland*, 535 U.S. 635 (2002) ................... 6
*Washington v. Louisiana*, No. 11–00334–BAJ–RLB, 2013 WL 5460331 (M.D. La. Sept. 30, 2013) ........................................................................................................................................ 4
*Will v. Mich. Dep't of State Police*, 491 U.S. 58 (1989) ............................................................... 8
*Williams On Behalf of J.E. v. Reeves*, 954 F.3d 729 (5th Cir. 2020) ............................................ 6

**Statutes**

42 U.S.C. § 1983 ............................................................................................................................. 8
La. R.S. § 23:1472 ..................................................................................................................... 1, 7
La. R.S. § 23:1664 ..................................................................................................................... 1, 7
La. R.S. § 23:3 ........................................................................................................................... 1, 9
La. R.S. § 23:4 ........................................................................................................................... 1, 9

**Rules**

Fed. R. Civ. P. 12(b)(1) .................................................................................................................. 2
Fed. R. Civ. P. 12(b)(6) .................................................................................................................. 2

**Treatises**

Federal Practice and Procedure (Wright & Miller), § 4232 ..................................................... 4, 12

**Constitutional Provisions**

La. Const. Art. 4 ........................................................................................................................ 1, 9

**Congressional Acts**

CARES Act ..................................................................................................................................... 1
Consolidated Appropriations Act of 2021 ..................................................................................... 1

**Articles**

Shay O'Connor, *Governor Edwards says officials are "working around the clock" to fix unemployment issues around the state"* ....................................................................................... 8

## I. INTRODUCTION

Following the onset of the COVID-19 pandemic, hundreds of thousands of Louisianans became unemployed and began to rely on unemployment compensation to meet their basic needs. More than a year later, the economic ramifications of the pandemic continue to reverberate, and many Louisianans are still unable to find and maintain employment.

The Louisiana Workforce Commission ("LWC") is the state agency tasked with administering Louisiana's unemployment compensation ("UC") program.[1] La. R.S. § 23:1472. As Secretary of the LWC, Secretary DeJoie is obligated to ensure that the LWC complies with all relevant federal laws and obligations. La. R.S. § 23:1664.[2] Governor Edwards is ultimately responsible for LWC operations. *See* La. Const. Art. 4, Sections 5 (A); (H)(1); 5(C); and 5(I); La. R.S. § 23:3; La. R.S. § 23:4; *see also infra* p. 10.

During this time of enormous and unprecedented need, Defendants have failed to meet their duties to provide timely and adequate access to critically needed unemployment compensation benefits for Plaintiffs and the members of the putative class. Claimants for unemployment compensation in Louisiana face long delays on both initial eligibility

---

[1] "Unemployment compensation," and "unemployment insurance" refers to benefits obtained through: Louisiana's unemployment insurance trust fund, known as State Unemployment Compensation; Pandemic Unemployment Assistance ("PUA"), Federal Pandemic Unemployment Compensation ("FPUC") or Pandemic Emergency Unemployment Compensation ("PEUC"), created by the federal CARES Act and extended by the Consolidated Appropriations Act of 2021 and the American Rescue Plan; or Mixed Earner Unemployment Compensation ("MEUC") created by the Consolidated Appropriations Act of 2021.
[2] "(1) In the administration of this Chapter, the administrator shall cooperate with the U.S. Department of Labor to fullest extent consistent with provisions of this Chapter, and shall take such action, through the adoption of appropriate rules, regulations, administrative methods, and standards, as may be necessary to secure this state and its citizens all advantages available under the provisions of Social Security Act that relate to unemployment compensation, the Federal Unemployment Tax Act, the Wagner-Peyser Act, and the Federal-State Extended Unemployment Compensation Act of 1970."

1

determinations and appeals, and do not receive adequate and timely notice of denials, disqualifications, and overpayments. Brooke Plaisance has been waiting more than a year for her UC benefits, and has never received notice as to why her benefits related to her March 2020 application were denied for some months and are still pending for others. Compl. ¶¶ 59-67. Frederick Bass and Amanda Coleman have both been waiting months for an opportunity to appeal alleged UC overpayments and related disqualifications from further benefits in order to get their assistance reinstated. Compl. ¶¶ 70-72, 75-79, 82, 85-94. Stephen Strick has been without benefits for months without any notice after informally resolving an overpayment determination. Compl. ¶¶ 99-105. In short, as a result of Defendants' policies and practices, many claimants are unable to receive and maintain UC benefits, despite their desperate need.

These systemic failures violate the Due Process Clause of the Fourteenth Amendment and the "when due" clause of the Social Security Act. 42 U.S.C. § 503 (a)(1). Plaintiffs seek preliminary and permanent injunctions on behalf of the purported class ordering Defendants to remedy these constitutional and federal statutory violations and provide them with the timely and fair process to which they are entitled when applying for and receiving UC benefits. For the reasons set forth below, the Court should deny Defendants DeJoie and Louisiana Workforce Commission and Defendant Edwards' Motions to Dismiss.

## II.     STANDARD OF REVIEW

Defendants bring their Motions to Dismiss under Rules 12(b)(1) (lack of subject-matter jurisdiction) and 12(b)(6) (failure to state a claim upon which relief can be granted) of the Federal Rules of Civil Procedure.

In considering a motion under Rule 12(b)(1), "a claim is 'properly dismissed for lack of subject-matter jurisdiction when the court lacks the statutory or constitutional power to

adjudicate' the claim." *In re FEMA Trailer Formaldehyde Products Liability Litigation (Mississippi Plaintiffs)*, 688 F.3d 281, 286 (5th Cir. 2012) (quoting *Home Builders Ass'n, Inc. v. City of Madison,* 143 F.3d 1006, 1010 (5th Cir. 1998)).  "A motion under 12(b)(1) should be granted only if it appears certain that the plaintiff cannot prove any set of facts in support of his claim that would entitle him to relief." *Home Builders Ass'n, Inc.*, 143 F.3d at 1010 (footnote and citation omitted). Additionally, "'the plaintiff's complaint is to be construed in a light most favorable to the plaintiff, and the allegations contained therein are to be taken as true.'" *Ramming v. U.S.*, 281 F.3d 158, 161-62 (5th Cir. 2001) (quoting *Oppenheimer v. Prudential Securities Inc.,* 94 F.3d 189, 194 (5th Cir. 1996)).

"On a motion to dismiss for failure to state a claim under Rule 12(b)(6), the Court 'must accept as true all of the factual allegations contained in the complaint.'" *Elsey v. Sullivan*, No. 12–332–BAJ–SCR, 2013 WL 2368867, at *1 (M.D. La. May 29, 2013) (quoting *Erickson v. Pardus,* 551 U.S. 89, 94 (2007)). "[T]he court need not accept 'a legal conclusion couched as a factual allegation,' or 'naked assertions [of unlawful conduct] devoid of further factual enhancement.'" *Milon v. LeBlanc*, No. 19-00717-BAJ-RLB, 2020 WL 6276953, at *2-3 (M.D. La. Oct. 26, 2020) (quoting *Papasan v. Allain*, 478 U.S. 265, 286 (1986); *see also Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)).  The Court must determine if the Complaint presents "enough fact to raise a reasonable expectation that discovery will reveal evidence of 'the necessary claims or elements.'" *Morgan v. Hubert*, 335 Fed App'x 466, 470 (5th Cir. 2009) (quoting *In re So. Scrap Material Co.,* 541 F.3d 584, 587 (5th Cir. 2008)).

A claim "has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Covington v. City of Madisonville, Texas*, 812 Fed. Appx 219, 223 (5th Cir. 2020) (citing *Iqbal*,

3

556 U.S. at 662). The Court must "'draw all inferences in favor of the nonmoving party, and view all facts and inferences in the light most favorable to the nonmoving party.'" *McLin v. Ard*, 866 F.3d 682, 688 (5th Cir. 2017) (quoting *Club Retro, L.L.C. v. Hilton*, 568 F.3d 181, 194 (5th Cir. 2009)). A complaint's factual allegations "must be enough to raise a right to relief above the speculative level." *Elsey*, 2013 WL 2368867 at *1 (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007)).

### III.   ARGUMENT

#### a. The Court has Subject Matter Jurisdiction over Plaintiffs Claims

Even if this Court rules that the claims for monetary relief sought by the named Plaintiffs is barred by the Eleventh Amendment, longstanding U.S. Supreme Court precedent allows the Plaintiffs' claims for injunctive relief against Secretary DeJoie and Governor Edwards to proceed. In *Ex parte Young*, 209 U.S. 123 (1908), the Court established an exception to the rule that a suit against a state official constitutes a suit against the state itself. *Ex parte Young*, 209 U.S. 123 (1908); *see also Verizon Maryland, Inc. v. Public Serv. Comm'n*, 535 U.S. 635, 645 (2002). The exception applies when "a plaintiff seeks prospective injunctive relief against state employees in their official capacities." *Washington v. Louisiana*, No. 11–00334–BAJ–RLB, 2013 WL 5460331, at *3 n.5 (M.D. La. Sept. 30, 2013). Pursuant to the *Ex parte Young* doctrine, "[a] federal court is not barred by the Eleventh Amendment from enjoining state officers from acting unconstitutionally, either because their action is alleged to violate the Constitution directly or because it is contrary to a federal statute or regulation that is the supreme law of the land." Federal Practice and Procedure (Wright & Miller), § 4232 Scope of the Young Doctrine; *see also City of Austin v. Paxton*, 943 F.3d 993, 998 (5th Cir. 2019) (discussing how

4

the *Ex parte Young* exception applies when a complaint alleges an ongoing violation of federal law and seeks prospective relief).

The *Ex parte Young* exception to the Eleventh Amendment's bar on suits against states or state officials in their official capacity for prospective injunctive relief applies directly to Plaintiffs' claims for injunctive relief requiring Defendants to ensure timely processing of unemployment compensation claims and appeals; and provide claimants with timely and adequate notice regarding denials, suspensions, and terminations of unemployment compensation.

In order for *Ex parte Young* to apply, certain criteria must be satisfied: "(1) A plaintiff must name individual state officials as defendants in their official capacities; (2) the plaintiff must allege an ongoing violation of federal law; and (3) the relief sought must be "properly characterized as prospective." *Green Valley Special Utility District v. City of Schertz, Texas*, 969 F.3d 460, 471 (5th Cir. 2020) (internal citations and quotations omitted). Fifth Circuit case law also asks courts to "consider whether the plaintiff has named the proper defendant or defendants." *Paxton*, 943 F.3d at 998. The court must conduct a "simple, straightforward inquiry" and should not consider the merits of the underlying claims. *Green Valley Special Utility District*, 969 F.3d at 471 (internal citations and quotations omitted).

Plaintiffs' claims satisfy all of these requirements. Secretary DeJoie and Governor Edwards are both named in their respective official capacities. Despite Defendants' assertions to the contrary, the policies and practices challenged in this litigation continue to harm the named Plaintiffs, and Defendants' violations of federal law are ongoing. For example, Plaintiff Plaisance has received neither unemployment benefits nor a written notice of denial that would allow her to appeal, and Defendants' failure to provide her with either benefits or notice

5

continues to this day. Compl. ¶¶ 61-64. Likewise, Plaintiffs Bass and Coleman are currently unable to appeal Defendants' determinations that their past benefits were an overpayment, and as a result cannot receive unemployment benefits. Compl. ¶¶ 77-79, 89-94. Plaintiff Strick successfully resolved an overpayment determination via informal contact with the LWC, but has been waiting months for his benefits to be reinstated.³ Compl. ¶¶ 104-105.

Plaintiffs also seek prospective relief in this litigation, namely, an injunction ordering Defendants to end delays in processing benefits determinations; end delays in processing appeals; end delays in rectifying incorrect overpayment designations; and end delays in the payment of benefits owed.⁴ *See* Compl. ¶ 165. This is precisely the type of relief the *Ex parte Young* line of cases allows for. When a defendant has taken an action that violates the rights of a plaintiff, an injunction ordering an end to the continued pursuit and enforcement of that action is prospective in nature. *See Verizon Maryland, Inc. v. Public Service Com'n of Maryland*, 535 U.S. 635, 645 (2002) (finding an injunction preventing a state agency from enforcing an existing order constituted prospective relief and fell within *Ex parte Young*); *Williams On Behalf of J.E. v. Reeves*, 954 F.3d 729, 738 (5th Cir. 2020) ("As long as the claim seeks prospective relief for ongoing harm, the fact that a current violation can be traced to a past action does not bar relief under *Ex parte Young*") (citing *Papasan* 478 U.S. at 282 (1986)).

---

³ After waiting four months for a hearing to appeal his overpayment determination, William Grieshaber was granted a hearing in April 2021.
⁴ Defendants LWC and DeJoie disingenuously suggest that Plaintiffs simply seek the issuance of benefits for which they were denied. This is not the case. Among the relief requested by Plaintiffs is "[t]hat an immediate injunction issue, ordering Defendants to refrain from…any further delays in payment of compensation due to a claimant as of any date more than thirty (30) days prior to the entrance of the temporary injunction." When quoting this language in their opening brief, Defendants chose to omit the phrase "any further delays in." Plaintiffs do not seek to impose a financial obligation on the state of Louisiana. Rather, Plaintiffs ask that this Court require Defendants to adopt policies and procedures that comply with federal constitutional and statutory law.

In supporting their argument that the Eleventh Amendment bars Plaintiffs' claims, Defendants LWC and DeJoie cite to case law that concerns claims for monetary damages alone—not prospective injunctive relief barring the use of constitutionally non-compliant procedures. *See Chaney v. Louisiana Work Force Com'n*, 560 Fed. Appx. 417 (5th Cir. 2014) (plaintiff sought monetary damages in the amount of ten million dollars); *Stroebel v. Rainwater*, 742 F. Supp. 2d (E.D. La. 2010) (plaintiff disputed amount award to him via a grant program and sought monetary damages). This case law is unavailing against Plaintiffs' claims for injunctive relief, which request relief of the sort that is routinely awarded by federal courts in cases concerning delays in access to government benefits. *See, e.g., Booth v. McManaman*, 830 F. Supp. 2d 1037 (D. Haw. 2011) (issuing a preliminary injunction to remedy delays in processing food stamps applications against Director of Hawaii Department of Human Services, sued in her official capacity); *Robidoux v. Kitchel*, 876 F. Supp. 575 (D. Vt. 1995) (awarding summary judgment to plaintiffs seeking injunctive relief to remedy delays in processing of applications for food stamps and Aid for Families with Needy Children, against Commissioner of Vermont Department of Social Welfare, sued in her official capacity); *Shifflett v. Kozlowski*, 843 F. Supp. 133 (W.D. Va. 1994) (awarding summary judgment to plaintiffs seeking injunctive relief to remedy delays in Medicaid appeals, against Director of Virginia Department of Medical Assistance Services, sued in his official capacity); *Robertson v. Jackson*, 766 F. Supp. 470 (E.D. Va. 1991) (issuing an injunction to remedy delays in processing of food stamp applications against Commissioner of Department of Social Services, sued in his official capacity).

Finally, Secretary DeJoie is the head of the Louisiana Workforce Commission, the agency tasked with administering Louisiana's unemployment insurance program, La. R.S. §§ 23:1472, 23:1664, and is thus a proper Defendant in this litigation. Governor Edwards, as the

7

chief executive officer of Louisiana, bears the ultimate responsibility for ensuring that the state meets its UC obligations. *See infra* p. 10.

    **b. Plaintiffs have Stated a Claim Upon Which Relief Can be Granted**

        **i.   Secretary DeJoie and Governor Edwards are "Persons" under 42 U.S.C § 1983.**

It is well settled that when a state official is sued in their official capacity, and for prospective injunctive relief, "the state actor is a person under § 1983 because 'official capacity actions for prospective relief are not treated as actions against the State.'" *Valentine v. Collier*, 993 F.3d 270, 282 (5th Cir. 2021) (citing *Will v. Mich. Dep't of State Police*, 491 U.S. 58, 71 n.10 (1989)) (quoting *Kentucky v. Graham*, 473 U.S. 159 n.14 (1985)); *Ex parte Young*, 209 U.S. 123, 159-60 (1908)).

Secretary DeJoie and Governor Edwards are sued in their official capacity, and, as explained above, the injunctive relief sought by Plaintiffs is entirely forward looking. *See supra* 6-7. Plaintiffs' request for injunctive relief does not seek to "undo" Defendants past actions. *See* ECF 28-1 at 11. Instead, Plaintiffs seek to prevent Defendants' unconstitutional policies and practices from continuing into the future and causing additional irreparable harm.

        **ii.   Plaintiffs have made sufficient allegations against Governor Edwards.**

Plaintiffs have made factual allegations against Governor Edwards which are "enough to raise a right to relief above the speculative level." *Elsey*, 2013 WL 2368867 at *1 (quoting *Twombly*, 550 U.S. at 555). Governor Edwards, in his official capacity as Governor of Louisiana, has failed to ensure timely processing and payment of claims for UC. Compl. ¶ 125. During the current crisis, he has held himself out as being actively involved in the state's UC problems, and working on solutions. Compl, ¶ 126 (citing Shay O'Connor, *Governor Edwards says officials are "working around the clock" to fix unemployment issues around the state*,"

8

WDSU, (Jan. 25, 2021), https://www.wdsu.com/article/governor-edwards-says-officials-are-working-around-the-clock-to-fix-unemployment-issues-around-the-state/35295791).  However, the actions for which he claims credit are have failed to end ongoing violations of Plaintiffs' rights under the Due Process Clause of the Fourteenth Amendment and 42 U.S.C. § 503 (a)(1).

Governor Edwards is the chief executive officer of the State of Louisiana. *See* La. Const. Art. 4, Section 5.  In his official capacity, Governor Edwards must see that federal and state laws "are faithfully executed."  La. Const. Art. 4, Section 5(A).  He has ultimate authority, both in terms of appointment, removal, and administration, over the executive directorship of the Louisiana Workforce Commission. *See* La. Const. Art. 4, Sections 5(H)(1); 5(C); and 5(I).

Governor Edwards has a number of duties specifically relating to the functioning of the LWC, and the administration of UC programs.  He has the authority to require Secretary Dejoie to provide reports and information regarding the LWC's implementation of, and compliance with, state and federal law. *Id.*  He must also consent to the appointment of certain agency employees, and approve the salaries of agency employees. La. R.S. § 23:3.  The Secretary of the LWC cannot establish new divisions of the agency in response to new needs without Governor Edwards' approval.  La. R.S. § 23:4.

    iii. **Plaintiffs have suffered, and continue to suffer, irreparable harm, and Plaintiffs' claims as to 42 U.S.C § 1983, the Fourteenth Amendment, and 42 U.S.C. § 503 (a)(1) are subject to injunctive relief.**

Plaintiffs in this litigation have suffered two distinct types of harm.  One is economic, and can be remedied with an order from the Court to Defendants to compensate Plaintiffs via monetary relief.  The second, however, is the deprivation of Plaintiffs' rights under the Due Process Clause of the Fourteenth Amendment and 42 U.S.C. § 503 (a)(1). Plaintiffs have suffered delays in the processing of their claims and appeals for unemployment compensation in

violation of the when due clause; been deprived of adequate notice regarding actions taken on their unemployment insurance; and been deprived of pre-termination process before having their unemployment insurance benefits cut off. Indeed, courts have held that deprivation of constitutional rights constitutes irreparable harm, and can be remedied via an injunction ordering Defendants to cease their unconstitutional policies and practices. *Hernandez v. Sessions*, 872 F.3d 976, 994-95 (9th Cir. 2017) ("It is well established that the deprivation of constitutional rights 'unquestionably constituted irreparable injury'") (quoting *Melendres v. Arpaio*, 695 F.3d 990, 1002 (9th Cir. 2012)); *Springtree Apartments, ALPIC v. Livingston Parish Council*, 207 F. Supp. 2d 507, 515 (M.D. La. 2001) ("It has been repeatedly recognized by the federal courts that violation of constitutional rights constitutes irreparable injury as a matter of law.").

If this Court rules that Plaintiffs claims for monetary relief are impermissible or improper, the Court should leave the claims for injunctive relief intact and allow the litigation to proceed. *See, e.g., Jones v. Texas Juvenile Justice Dept.*, 646 Fed. Appx. 374 (5th Cir. 2016) (upholding district court dismissal of claims for monetary relief against government officials sued in their official capacity, but vacating district court dismissal of claims for injunctive relief against same officials); *Ganther v. Ingle*, 75 F.3d 207 (5th Cir. 1996) (upholding district court dismissal of claims for monetary relief against government officials sued in their official capacity, but vacating district court dismissal of claims for injunctive relief against same officials).

    **iv.**    **Injunctions are routinely issued against state officials for enacting policies and practices that violate federal law.**

Defendants LWC and Secretary DeJoie argue that their actions administering unemployment insurance are pursuant to, not in violation of, federal law. Defendants assert that "an injunction for violating federal law…is generally only available in connection with

10

enforcement of state statutes or local ordinances or policies that attempt to preempt federal law"—apparently taking the position that because they are administering federal programs, their actions must be essentially immune from an injunction issued by a federal court as a matter of course. There is virtually no case law to support such an assertion. Indeed, federal courts, including those in this Circuit, routinely enforce federal statutory and constitutional requirements against states in relation to the administration of federal programs. *See McCarthy ex rel. Travis v. Hawkins,* 381 F.3d 407 (5th Cir. 2004) (upholding denial of motion to dismiss claims relating to administration of state Medicaid program); *see also Garnett v. Zeilinger*, 313 F. Supp. 3d 147 (D.D.C. 2018) (enforcing requirements of SNAP Act when agency policies and practices were allegedly in violation); *Robertson*, 766 F. Supp. 470 (finding Virginia violated the Food Stamp Act and granting an injunction to "enjoin the defendant in his official capacity from failing to bring the Virginia Food Stamp Program forthwith into compliance with the Food Stamp Act.").

Defendants cite only two examples to support their invented restriction on injunctive relief ordered against a state official. The passage Defendants cite from *City of Austin v. Paxton* merely discusses, in the course of the court's analysis as to whether the State of Texas Attorney General was a proper defendant for the purposes of *Ex parte Young*, another case in which a defendant directly challenged a state statute. *See* 943 F.3d at 998 (citing *Morris v. Livingston*, 739 F.3d 740, 742 (5th Cir. 2014). The *Paxton* court's holding is inapposite. The second, *Pechon v. Louisiana State Department of Health and Hospitals* is a case arising out of the firing of a single state employee, and the passage cited concerns state and state official liability under *Ex parte Young*. No. CV-08-0664, 2009 WL 10680168 (E.D. La. Jan. 15, 2009). The decision does note that under *Ex parte Young*, "citizens may institute actions in federal courts to enjoin state officials from enforcing *unconstitutional laws*," *id.* at *4, but the *Pechon* court's holding on

11

this point concerns the application of *Ex parte Young* to states and state agencies—not the propriety of ordering injunctive relief against a state official sued in their official capacity. Moreover, the quoted language is typically interpreted by courts to include the enforcement of unconstitutional policies, procedures, and practices by state actors. *See e.g.*, *Alden v. Maine,* 527 U.S. 706, 747 (1999) (*Ex parte Young* allows courts to grant injunctive relief against state officers to preserve the Constitution as the "supreme law of the land."); *McCarthy ex rel. Travis,* 381 F.3d at 412 (quoting *Quern v. Jordan,* 440 U.S. 332, 337 (1979)) ("Under *Ex parte Young,* 'a federal court, consistent with the Eleventh Amendment, may enjoin state officials to conform their future conduct to the requirements of federal law.'"); *see also* Federal Practice and Procedure § 4232, Wright & Miller ("A federal court is not barred by the Eleventh Amendment from enjoining state officers from *acting* unconstitutionally…") (emphasis added).

Defendants LWC and DeJoie claim to have been acting under the guidance of the United States Department of Labor in administering Louisiana's unemployment insurance programs, but it does not follow that an injunction is unavailable. Defendants point to no federal guidance directing them to implement months long delays in benefit determinations and administrative hearings. In our federalist system, there are many state-administered programs which are authorized by federal law, funded (in whole or in part) by federal money, and overseen by federal agencies— and states often still fail to meet their statutory and constitutional obligations. When this happens, courts should—and do—issue injunctions to remedy the harm done to program beneficiaries. *See, e.g., Garnett*, 313 F. Supp. 3d at 147 (issuing preliminary injunction to remedy state agency delays in processing SNAP applications, in violation of SNAP Act); *Planned Parenthood Gulf Coast, Inc. v. Kliebert*, 141 F. Supp. 3d 604 (M.D. La. 2015) (issuing

12

preliminary injunction to remedy alleged state agency violation of Medicaid Act and Fourteenth Amendment); *Hiltibran, et al., v. Levy, et al.,* 793 F. Supp. 2d 1108 (W.D. Mo. 2011) (issuing injunction to remedy state violations of reasonable standards requirement of Medicaid Act); *Robertson*, 766 F. Supp. 470 (issuing an injunction to remedy delays in processing of food stamp applications, in violation of Food Stamp Act).

## IV. CONCLUSION

This Court has subject matter jurisdiction over Plaintiffs' claims, and Plaintiffs have stated claims upon which relief can be granted. The LWC/DeJoie Motion to Dismiss and the Edwards Motion to Dismiss should be denied.

Dated: May 5, 2021

Respectfully submitted,

| | |
|---|---|
| */s/ Ellyn J. Clevenger* | */s/ Saima A. Akhtar* |
| Ellyn J. Clevenger (#32395) | Saima A. Akhtar |
| Wendy Manard (#29622) | (NY Bar Roll # 4661237) |
| Manard Law | National Center for Law and |
| 1100 Poydras Street, Suite 2610 | Economic Justice |
| New Orleans, LA 70163 | 275 Seventh Avenue, Suite 1506 |
| Telephone: (504) 585-7777 | New York, NY 10001 |
| Fax: (504) 556-2977 | Telephone: (212) 633-6967 |
| wendy@wmanard.com | Fax: (212) 633-6371 |
| ellyn@wmanard.com | akhtar@nclej.org |
| ATTORNEYS FOR PLAINTIFFS | ATTORNEYS FOR PLAINTIFFS |