**UNITED STATES DISTRICT COURT**

**MIDDLE DISTRICT OF LOUISIANA**

| | | |
|---|---|---|
| **BROOK PLAISANCE, ET AL.** | : | **CIVIL ACTION NO. 3:21-cv-121-JWD-EWD** |
| | : | |
| **VERSUS** | : | |
| | : | **JUDGE JOHN W. DeGRAVELLES** |
| **STATE OF LOUISIANA, ET AL.** | : | **MAGISTRATE JUDGE ERIN WILDER-DOOMES** |

**MEMORANDUM IN SUPPORT OF MOTION FOR
JUDGMENT ON THE PLEADINGS**

**MAY IT PLEASE THE COURT**:

**I.     INTRODUCTION**

As Plaintiffs note in their Amended Complaint, the federal CARES Act enacted in March 2020, to combat the impending unemployment crisis due to the Covid-19 pandemic, resulted in the LWC receiving an unprecedented influx in claims for unemployment benefits. The inescapable conclusion is that no state could have been prepared for and processed, within the time limits demanded by Plaintiffs, the overwhelming number of unemployment claims filed as a result of the CARES Act. LWC, like its fellow state unemployment programs, took Herculean measures to meet the increased claims volume and implement brand new unemployment programs on the fly. Specifically, LWC increased its staff, adding 23 adjudicators (staff trained to handle more complex benefit determinations) and another 85 additional contract staff to grow its adjudicator ranks to 127, from a pre-pandemic figure of just 19. LWC also increased its call center numbers to over 300, up from a pre-pandemic figure of 29. Even with the additions to its workforce, keeping up

1

with the mindboggling 975% increase in claims volume in 2020 over claims for the prior year proved to be a daunting task.

Plaintiffs' allegations include unrealistic demands that LWC, in addition to increasing staff while implementing the brand new pandemic unemployment programs, should have met minimal delays in processing the 20 to 30 times more claims than it handled in the previous year. In addition to the sheer number of claims, the CARES Act created new eligibility criteria. For example, the CARES Act for the first time allowed gig workers to receive unemployment benefits. This expansion of eligibility placed an even greater burden on the LWC, which required more time to process the approximately 330,000 to 360,000 claims each month in March 2020 through October 2020. That amount compares to the approximate 10,000 to 15,000 regular unemployment claims from January 2019 to March 2020.[1] Causing further delays in processing the CARES Act claims, Act 243 of the Louisiana 2020 Regular Legislative Session delayed the reporting of employees' wages by employers to LWC from April 1, 2020 to June 30, 2020 (a total of 45 days). LWC relies on this key wage information to verify income attested to by individuals applying for unemployment benefits.

Despite the extreme burden placed on the LWC from March 20, 2020 through December 31, 2020, 479,194 individuals received traditional unemployment benefits in the amount of $1,414,641,392.00; and 672,805 individuals received federal unemployment benefits in the amount $5,458,129,582.00. Because of the significant increase in the number of applicants due to the Covid-19 pandemic, legislative action that gave employers additional time to submit their wage

---

[1] *See* Exhibit 1, March 31, 2021 Louisiana Legislative Audit, and Exhibit 2, the Preliminary Report of Dr. James Richardson. This report was included as an Exhibit in the Petition for Preliminary Injunction in Young, et. al. v. State of Louisiana, et. al., Number 710197, Nineteenth Judicial District, Parish of East Baton Rouge, State of Louisiana, Div. F. The Plaintiffs' attorneys in that matter are also the Plaintiffs' attorneys in the instant case. Judge Kelley took Judicial Notice of that report. This Court should take Judicial Notice of both exhibits, which are publicly available documents.

reports, and the Department of Labor's (DOL) priority of searching and verifying false claims, it has been determined that as of March 31, 2021, approximately $405,000,000 were mistakenly paid to 96,585 individuals who were ineligible for benefits.[2] This data, as well as Plaintiffs' allegations, reveals that there was simply no policy, custom or practice instituted by Secretary Cates, as Secretary of the Louisiana Workforce Commission, that was the direct or "moving force" behind the delayed claims, as alleged by Plaintiffs.

In the 45-page Amended Complaint, in only a few paragraphs do Plaintiffs vaguely make the only allegations relevant to their "custom, policy, pattern and practice" claims. These vague, conclusory allegations do not even refer to Secretary Cates, but to "Defendant" or "Defendants." Other than a few passing, conclusory statements of "customs, policies, patterns and practices," Plaintiffs' vague, non-specific allegations fail to put the Secretary of the LWC on notice of exactly what policy, practice, custom or pattern she was responsible for creating, implementing, or enforcing. *See, e.g. Blackburn v. City of Marshall*, 42 F.3d 925, 931 (5th Cir. 1995*)* ("[C]onclusory allegations or legal conclusions masquerading as factual conclusions will not suffice to prevent a motion to dismiss.").

Instead, the only policy, practice, custom, or pattern that existed after March 2020 was to process, as quickly as "administratively feasible," the approximate 20 to 30 times more claims than were processed before March 2020. A large portion of the pandemic benefits claims were deficient and lacked the information needed to make the required determinations. The increased burden and time necessary to comply with the DOL's priority to investigate false and fraudulent claims led to additional delays. It is not surprising that numerous states, given the overwhelming burdens with the influx of millions of new claims in a condensed period, are having the same

---

[2] *See* Exhibit 1, March 31, 2021 Louisiana Legislative Audit, at pp. 3-4.

difficulties. These extenuating circumstances caused the delays alleged by Plaintiffs, not any policy, practice, custom or pattern created or promulgated by Secretary Cates. As such, Secretary. Cates is not legally liable for any violation of due process or Section 1983 claims.

## II. BACKGROUND AND MATERIAL ALLEGATIONS

This Motion for Judgement on the Pleadings tests the sufficiency of the factual allegations in Plaintiffs' Amended Complaint. As this Court is aware, Plaintiffs instituted this action against not only Secretary Cates, but also the State of Louisiana, the Louisiana Workforce Commission, and Governor John Bel Edwards in his official capacity as the chief executive officer of the State of Louisiana.[3] Each of the defendants filed motions to dismiss for lack of subject matter jurisdiction.[4] When Plaintiffs filed their Amended Complaint, naming only Secretary Cates and the LWC as Defendants, the Court dismissed the State and the Governor from this action.[5] The Court then rendered its decision on the LWC and Secretary Cates's motion to dismiss, finding that the LWC had sovereign immunity but Plaintiffs could maintain this § 1983 action against only the Secretary in her official capacity pursuant to *Ex parte Young*.[6] While the Court found that it had jurisdiction over Plaintiffs' claims against the Secretary for ongoing violations of federal law, Plaintiffs' allegations in their Amended Complaint fail to state a claim for relief, and the claims must be dismissed.

Plaintiffs, in their Amended Complaint, seek to compel Defendant, Ava Cates, in her official capacity as Secretary of the Louisiana Workforce Commission, to meet the "legal and Constitutional requirements of operating a state program for unemployment insurance benefits,"

---

[3] *See* R. Doc. No. 1.
[4] R. Doc. Nos. 8, 18, & 28.
[5] R. Doc. No. 46.
[6] R. Doc. No. 48. "For a suit to proceed under [the *Ex Parte Young*] doctrine, it must be a suit seeking declaratory or injunctive relief and: '(1) be brought against state officers who are acting in their official capacities; (2) seek prospective relief to redress ongoing conduct; and (3) allege a violation of federal, not state, law.'" *Id*. at p. 5 (quoting *Williams on Behalf of J.E. v. Reeves*, 954 F.3d 729,735–36 (5th Cir. 2020)).

and seek "relief for violations of Plaintiffs' right to procedural due process, and pendent state law claims."[7] Plaintiffs allege, *inter alia*, that "Defendants (the LWC and Secretary Cates) have a custom, policy, pattern and practice of failing to: a) complete the process of determining eligibility for Unemployment Compensation ("UC"); b) provide adequate notice of a determination of eligibility for UC or termination from UC; and c) maintain a constitutionally sufficient process for seeking administrative review of agency actions."[8]

Specifically, Plaintiffs allege that:

- "as a result of their customs, policies, patterns and practices, the LWC routinely issues notices that provide very little or no notice of the factual and legal bases for its decisions impacting eligibility, depriving claimants of the opportunity to prepare an effective and informed response and failing to ensure that the LWC will have all the relevant facts to make an accurate and informed decision."[9]

- "as a result of their customs, policies, patterns and practices, the LWC routinely issues notices that provide very little or no notice of the factual and legal bases for the termination."[10]

- "Defendants have a custom, policy, pattern and practice of failing to determine appeals with "the greatest promptness that is administratively feasible;" and has frustrated the spirit and purpose of both the CARES Act and its subsequent extending legislation and the Social Security Act's provisions—both of which contemplate expeditious resolution of claims and appeals."[11]

---

[7] R. Doc. No. 45, at p. 2.
[8] R. Doc. No. 45 ¶ 35.
[9] *Id*. at ¶ 107.
[10] *Id*. at ¶ 115.
[11] *Id.* at ¶ 138.

5

- **"Defendant has a custom, pattern and practice of failing to render eligibility determinations, including the required written notice, within 30 days and failing to include the calculation of backpay where proper, consistent with Department of Labor guidance."**[12]

Based on the foregoing, Plaintiffs have sought declaratory and injunctive relief.

### III.   LAW AND ARGUMENT

**A. Standard of Review for A Motion for Judgment on the Pleadings**

A motion for judgment on the pleadings pursuant to Federal Rule of Civil Procedure 12(c) is subject to the same standard as a motion pursuant to Rule 12(b)(6). *In re Vioxx Products Liab. Litig.*, 861 F. Supp. 2d 756, 759 (E.D. La. 2012) *(citing Doe v. MySpace, Inc.*, 528 F.3d 413, 418 (5th Cir. 2008)). A complaint should be dismissed under Rule 12(b)(6) if it fails to state a "plausible" claim for relief. *Bell At. Corp. v. Twombly*, 550 U.S. 544, 555-56, 127 S. Ct. 1955, 1965, 167 L. Ed. 2d 929 (2007) (a party must allege facts that "raise a right to relief above the speculative level."); *Ashcroft v. Iqbal*, 556 U.S. 662, 129 S. Ct. 1937, 1954, 173 L. Ed. 2d 868 (2009). In *Iqbal*, the United States Supreme Court set forth its two-pronged analysis for considering a motion to dismiss. First, a court must accept only the factual allegations in the complaint as true, and it is "not bound to accept as true a legal conclusion couched as a factual allegation." *Iqbal*, 556 U.S. 662, 678. Second, a court should conduct a "context-specific" analysis that "draw[s] on [the court's] judicial experience and common sense to determine whether the allegations remaining after the legal conclusions are stripped away 'plausibly give rise to an entitlement to relief.'" *Id.* at 679. In other words, to survive a Rule 12(b)(6) motion to dismiss, the plaintiff must plead "enough facts that state a claim to relief that is plausible on its face." *Bell*

---

[12] R. Doc. No. 45 ¶¶ 148 & 152.

*Atlantic Corp. v. Twombly*, 550 U.S. 544, 570, 127 S. Ct. 1955, 167 L. Ed. 2d 929 (2007). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678.

Moreover, under Fed. R. Civ. P. R. 8, the pleading standard does not require a complaint to contain "detailed factual allegations," but it demands "more than an unadorned, the defendant-unlawfully-harmed-me accusation." *Twombly*, 550 U.S. 555. A complaint that offers "labels and conclusions," or "a formulaic recitation of the elements of a cause of action will not do." *Id.* Nor does a complaint suffice if it tenders "naked assertion[s]" devoid of "further factual enhancement." *Id.* Here, Plaintiffs have failed to do any more than, in some instances, provide conclusory allegations and, in others, allege facts that do not provide a cause of action under the law. They have thus failed to state a claim upon which relief can be granted and their claims against Secretary Cates should be dismissed accordingly.

### B. Plaintiffs have failed to state a claim for relief under § 1983.

As explained above, the Court found that it had jurisdiction over Plaintiffs' claims to the extent that they seek prospective relief for ongoing violations of federal law.[13] This is because, pursuant to *Ex parte Young*, state officials sued in their official capacities for such relief are considered persons under 42 U.S.C. § 1983. *See Will v. Michigan Dep't of State Police*, 491 U.S. 58, 71 n.10, 109 S. Ct. 2304, 105 L. Ed. 2d 45 (1989). But unlike personal-capacity lawsuits, which seek to impose personal liability on the governmental official, official-capacity lawsuits "generally represent only another way of pleading an action against an entity of which an officer is an agent." *Kentucky v. Graham*, 473 U.S. 159, 167 (1985) (quoting *Monell v. New York City*

---

[13] R. Doc. No. 48.

7

*Dept. of Social Services,* 436 U.S. 658, 690, n.55 (1978)). "On the merits, to establish *personal* liability in a § 1983 action, it is enough to show that the official, acting under color of state law, caused the deprivation of a federal right." *Id*. at 166 (citing *Monroe v. Pape,* 365 U.S. 167 (1961)). "More is required in an official-capacity action, however, for a governmental entity is liable under § 1983 only when the entity itself is a *moving force* behind the deprivation; thus, in an official-capacity suit the entity's *policy or custom* must have played a part in the violation of federal law." *Id*. (internal quotation marks and citations omitted) (emphasis added).

Therefore, the Secretary may be liable under § 1983 in her official capacity only if: "(1) there is a constitutional violation, (2) an official policy or custom; and (3) a showing that the official policy or custom was the operational force behind the constitutional violation." *Jingping Xu v. Univ. of Texas M.D. Anderson Cancer Ctr.*, 595 F. App'x 341, 344 (5th Cir. 2014) (quoting *Bellard v. Gautreaux*, 675 F.3d 454, 462 (5th Cir. 2012)). The Supreme Court has defined "policy" as a "statement, ordinance, regulation, or decision officially adopted and promulgated" by the official. *Monell v. Department of Soc. Services*, 436 US 658, 690 (1978). The Supreme Court explained that an entity or official may also be sued for deprivations caused by a "governmental custom," or "practices of state officials that could well be so permanent and well settled as to constitute a 'custom or usage' with the force of law." *Id*. at 691 (quoting *Adickes v. S. H. Kress & Co.*, 398 U.S. 144, 167-68 (1970)).

Plaintiffs' allegations do not state a claim against the Secretary, in her official capacity, that would allow Plaintiffs to recover and the Court to retain jurisdiction under § 1983. First, Plaintiffs have not alleged an ongoing violation of federal law. While the Court, in its prior decision on the motion to dismiss, found that Plaintiffs could maintain this action pursuant to *Ex*

8

*parte Young*, the Court's decision was grounded primarily in Plaintiffs' requested relief.[14] Although Plaintiffs have requested injunctive relief, they have failed to allege that the requested relief will cure an ongoing or any future violation of federal law by the Secretary. Rather, they allege that the LWC has failed to provide them with timely benefits determinations and proper notice of the reasons for disqualification or termination of benefits with information about appeals, in accordance with La. R.S. 23:1471 *et seq*.[15] Their request for injunctive relief to cure the LWC's alleged past violations that would, for example, require the LWC to provide Plaintiffs with the proper eligibility or termination notices, does not equate to an ongoing or future violation. Plaintiffs' Amended Complaint is void of *factual* allegations describing ongoing or future violations by the LWC or Secretary Cates. At best, Plaintiffs' allegations assume that because they have been denied benefits or timely notices, such actions will continue or will likely happen to others in the future. These conclusory assumptions are insufficient to state a claim for relief.

Even assuming Plaintiffs can state a claim for an ongoing constitutional violation, which the Secretary denies, their allegations do not allege that a policy or custom is the operational or moving force behind the alleged procedural due process violations.[16] That is, Plaintiffs do not identify any official policy created, enacted, implemented, or enforced by Secretary Cates,

---

[14] R. Doc. No. 48, pp. 6-7.

[15] R. Doc. No. 45 ¶¶ 27-34;

[16] Plaintiffs bring various procedural due process claims against the Secretary in their Amended Complaint. "To prevail on a procedural due process claim, a plaintiff must show that (1) he or she has a recognized property or liberty interest and (2) was deprived of that liberty or property interest without adequate notice or meaningful opportunity to be heard." *Salinas v. Texas Workforce Comm'n*, No. 11-559, 2013 WL 4511638, *6 (W.D. Tex. Aug. 22, 2013) (citing *Mathews v. Eldridge*, 424 U.S. 319, 332-35, 96 S. Ct. 893, 47 L.Ed.2d 18 (1976)). Due process "is not a technical conception with a fixed content unrelated to time, place, and circumstances." *Mathews*, 424 U.S. at 334. "The requirements of procedural due process are 'flexible and call[ ] for such procedural protections as the particular situation demands.'" *Salinas*, 2013 WL 4511638, at *7 (quoting *Morrissey v. Brewer*, 408 U.S. 471, 481 (1972)). Therefore, "to determine whether a constitutional violation has occurred, it is necessary to ask what process the State provided, and whether it was constitutionally adequate." *Zinermon v. Burch*, 494 U.S. 113, 126 (1990).

resulting in the deprivation of Plaintiffs' unemployment benefits, that could be considered an official policy or permanent practice or custom.

Plaintiffs' claims arise directly out of the Covid-19 pandemic and the CARES Act that expanded eligibility for unemployment compensation. They admit as much. It is undisputed that processing unemployment benefits within the time frames implemented by state law and federal regulations *prior to* the Covid-19 pandemic have been difficult or impossible to meet with the significant influx of unemployment compensation claims. At best, Plaintiffs' Amended Complaint is a litany of allegations highlighting the difficulties the LWC, its staff, and all states have faced implementing the new CARES Act programs while maintaining the program's integrity. The Amended Complaint is devoid, however, of allegations that indicate Secretary Cates implemented or enforced official policies that deprived Plaintiffs of their property allegedly due. Plaintiffs merely assume that the LWC employees processing each claim for unemployment compensation, and resulting delays, must be the result of a policy, custom or practice performed at the direction of Secretary Cates. Again, assumptions do not meet the pleading standard under Rule 8, and the allegations are not sufficient to state a claim under § 1983. *See Jingping Xu*, 595 F. App'x at 344 (dismissing the plaintiff's official capacity claims under § 1983 because she "alleged no policy or custom, official or otherwise," related to her claims).

### C. Plaintiffs cannot maintain pendent state law claims under *Ex parte Young*.

As explained above, Secretary Cates is the only defendant remaining in this lawsuit because this Court determined that the LWC, as an arm of the State, is entitled to sovereign immunity.[17] The Court allowed Plaintiffs to maintain this action against Secretary Cates in her official capacity as Secretary of the LWC pursuant to *Ex parte Young*, which allows Plaintiffs to

---

[17] *See* R. Doc. No. 48.

10

maintain a claim against a state official in her official capacity if the relief sought is prospective and plaintiffs challenge an ongoing violation of federal law. *Williams on Behalf of J.E. v. Reeves*, 954 F.3d 729,735–36 (5th Cir. 2020)). However, "*Ex parte Young* cannot be used to redress a state official's violation of state law." *Williams On Behalf of J.E. v. Reeves*, 954 F.3d 729, 739 (5th Cir. 2020) (citing *Pennhurst State Sch. & Hosp. v. Halderman*, 465 U.S. 89, 106 104 S. Ct. 900, 79 L. Ed. 2d 67 (1984)). The *Ex parte Young* exception to sovereign immunity "does not apply when plaintiffs seek to vindicate state-law rights, because there is no 'greater intrusion on state sovereignty' than when a federal court instructs a state official on how to conform her conduct to state law." *Planned Parenthood Gulf Coast, Inc. v. Phillips*, 5 F.4th 568, 577 (5th Cir. 2021) (quoting *Pennhurst*, 465 U.S. at 106).

Plaintiffs have not only asserted constitutional violations, but they have also alleged violations of state law.[18] Specifically, in Plaintiffs' Second Claim for Relief, they allege the LWC and Secretary Cates have violated La. R.S. 23:1625 & 1626(B)-(C) because they have failed to provide "notice of the determination and the reasons therefore."[19] Plaintiffs allege this is a violation of the statutes because LWC issues notices that provide very little or no notice of the factual or legal bases for the termination, in compliance with said statutes.[20] In their Sixth Claim for Relief, Plaintiffs allege that Louisiana law, La. R.S. 23:1624, requires the LWC, within thirty days of the claimant filing the claim for unemployment compensation, to issue a notice of determination that includes a statement as to whether benefits are payable, the week benefits will commence, the benefit amount, and the maximum duration of benefits.[21] Plaintiffs assert the LWC

---

[18] R. Doc. No. 45, p. 2 ("Plaintiffs request a temporary injunction, as well as permanent declaratory and injunctive relief for violations of Plaintiffs' right to procedural due process, and pendent state law claims.").
[19] R. Doc. No. 45 ¶ 113.
[20] *Id*. at ¶ 115-16.
[21] *Id*. at ¶ 146.

11

and/or the Secretary fail to render eligibility determinations and required notice within the thirty days.[22]

Plaintiffs' Amended Complaint, therefore, asks the Court to order Secretary Cates to comply with specific state laws, which claims are barred by *Pennhurst* and invalid under *Ex parte Young*. *Williams*, 954 F.3d at 739-41. Accordingly, any claims for violations of state law must be dismissed.[23]

## CONCLUSION

Secretary Cates, in her official capacity as Secretary of the Louisiana Workforce Commission, is entitled to know the specific policy, practice, pattern or custom that was the "moving force" that caused Plaintiffs alleged constitutional or other federal law violations. Without this specific identification of wrongdoing attributed to her and for which she is legally liable, or the identification of any LWC policy or custom, Secretary Cates cannot fairly and fully defend herself. For these reasons and those noted above, she respectfully requests the Court to grant this Motion for Judgment on the Pleadings pursuant to Rule 12(c) of the Federal Rules of Civil Procedure.

---

[22] R. Doc. No. 45 ¶ 148.
[23] To be sure, the Court has already dismissed Plaintiffs' claims for compensatory damages, as *Ex parte Young* only allows Plaintiffs prospective relief in a lawsuit against a state official in her official capacity. R. Doc. No. 48, p. 7.

Respectfully submitted,

**ADAMS AND REESE LLP**

*/s/ Erica P. Sensenbrenner*
William B. Gaudet (#1374)
Kellen J. Mathews (#31860)
Erica P. Sensenbrenner (#38400)
450 Laurel St., Suite 1900
Baton Rouge, Louisiana 70801
Telephone: (225) 336-5200
Facsimile:  (225) 336-5220
Email:  Billy.Gaudet@arlaw.com
Email:  Kellen.Mathews@arlaw.com
Email: Erica.Sensenbrenner@arlaw.com
***Attorneys for Secretary Ava Cates and Louisiana Workforce Commission***

## CERTIFICATE OF SERVICE

I hereby certify that on this 24th day of September 2021, the foregoing pleading was filed and served via CM/ECF on all parties.

*/s/ Erica P. Sensenbrenner*
Erica P. Sensenbrenner