**IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF LOUISIANA**

| | |
|---|---|
| BROOKE PLAISANCE, FREDERICK BASS, AMANDA COLEMAN, STEPHEN STRICK, AND WILIAM GRIESHABER, on behalf of themselves and those similarly situated, | **Civil Action No.: 3:21-CV-121-BAJ-EWD** |
| Plaintiffs, | **Judge: JOHN W. DEGRAVELLES** |
| v. | **Magistrate: ERIN WILDER-DOOMES** |
| AVA M. DEJOIE, in her official capacity as Secretary of the Louisiana Workforce Commission, | |
| Defendants. | |

**MEMORANDUM OF LAW IN OPPOSITION TO DEFENDANT'S
MOTION FOR JUDGMENT ON THE PLEADINGS**

The COVID-19 pandemic has led to unprecedented numbers of Louisianans relying on some form of unemployment compensation.[1] Unemployment compensation offers support to Louisianans during this economic crisis so they may meet their basic needs, such as rent, utilities, and food. *See* LA. STAT. ANN. § 23:1471 ("Unemployment . . . requires appropriate action . . . to lighten its burden which now so often falls with crushing force upon the unemployed worker and his family."). Yet, during this time of extraordinary need, Defendant, Ava Cates,[2] in her official capacity as Secretary of the Louisiana Workforce Commission, has failed to meet her duty to provide timely and adequate process for Plaintiffs and the putative

---

[1] Unemployment compensation refers to benefits obtained through: Louisiana's unemployment insurance trust fund, known as State Unemployment Compensation; Pandemic Unemployment Assistance; Federal Pandemic Unemployment Compensation; Pandemic Emergency Unemployment Compensation; and Mixed Earner Unemployment Compensation.

[2] Defendant's Memorandum in Support of Motion for Judgment on the Pleadings, ECF 67-1, refers to Defendant Ava Dejoie with her married name, Ava Cates. Plaintiffs follow suit.

class they represent, who have been, are being, or will be denied access to much needed unemployment compensation. These systemic failures violate the Due Process Clause of the Fourteenth Amendment and the "when due" clause of the Social Security Act, 42 U.S.C. § 503(a)(1).

Defendant's Motion for Judgement on the Pleadings is both legally and factually unsupported. Defendant relies on incorrect legal standards to argue that Plaintiffs have failed to state a claim for relief under § 1983. For the reasons set forth below, the Court should deny Defendant's Motion for Judgement on the Pleadings.

# TABLE OF CONTENTS

STANDARD OF REVIEW....................................................................................................7

ARGUMENT.......................................................................................................................8

I.    THE COURT SHOULD NOT CONSIDER THE NEW AND IRRELEVANT
EVIDENCE IMPROPERLY INTRODUCED BY DEFENDANT ...........................................8

  A.    The Court May Not Consider Matters Outside of the Pleadings. ..................................8

  B.    Defendant Improperly Offered Documents for Judicial Notice. ...................................9

II.    THIS COURT HAS JURISDICTION OVER PLAINTIFFS' CLAIMS UNDER THE *EX
PARTE YOUNG* DOCTRINE.................................................................................................11

III.    PLAINTIFFS HAVE STATED A CLAIM UPON WHICH RELIEF CAN BE
GRANTED UNDER 42 U.S.C. § 1983. ...........................................................................12

  A.    Plaintiffs Properly Allege that they Suffered a Violation of their Federal Rights Under
Color of State Law...........................................................................................................12

    1.    Plaintiffs Have Stated Sufficient Facts to Support their Procedural Due Process
Claims. ...........................................................................................................................13

      i.    Plaintiffs have alleged facts in support of their claims that Defendant fails to
process unemployment compensation in an adequate and timely manner. ..................14

      ii.    Plaintiffs have alleged facts in support of their claims that Defendant has
deprived them of adequate and timely notice.............................................................15

      iii.    Plaintiffs have alleged facts in support of their claims that Defendant has
deprived them of adequate and timely opportunity to be heard. .................................18

    2.    Plaintiffs Have Stated Sufficient Facts to Support their "When Due" Claim .........20

  B.    *Monell* Does Not Apply to Claims Brought Against A State Official in her Official
Capacity for Prospective Injunctive Relief. ......................................................................20

IV.    PLAINTIFFS ACKNOWLEDGE THAT THE STATE LAW CLAIMS CANNOT BE
MAINTAINED. ................................................................................................................25

CONCLUSION.................................................................................................................25

# TABLE OF AUTHORITIES

## <u>CASES</u>

*Ashcroft v. Iqbal*, 556 U.S. 662 (2009) ...................................................................................7

*Ballard v. Burton*, 444 F.3d 391 (5th Cir. 2006) ...................................................................22

*Bd. of Cnty. Comm'rs of Bryan Cnty., Okl, v. Brown*, 520 U.S. 397 (1997)...............................21

*Bell Atl. Corp. v. Twombly*, 550 U.S. 544 (2007) .....................................................................7

*Bellard v. Gautreaux*, 675 F.3d 454 (5th Cir. 2012).........................................................22, 23

*Bogard v. Cook*, 586 F.2d 399 (5th Cir. 1978) .......................................................................23

*Brock v. Roadway Express, Inc.*, 481 U.S. 252 (1987) .............................................................13

*Cal. Dep't of Human Res. Dev. v. Java*, 402 U.S. (1971).........................................................20

*Cherry Knoll, L.L.C. v. Jones*, 922 F.3d 309 (5th Cir. 2019).....................................................23

*City of Canton, Ohio v. Harris*, 489 U.S. 378 (1989) ...............................................................21

*Club Retro, L.L.C. v. Hilton*, 568 F.3d 18 (5th Cir. 2009) ..........................................................7

*Collins v. Morgan Stanley*, 224 F.3d 496 (5th Cir. 2000) ...........................................................8

*Cuellar v. Tex. Emp. Comm'n*, 825 F.2d 930 (1987) ................................................................13

*Doe v. MySpace, Inc.*, 528 F.3d 413 (5th Cir. 2008) .................................................................7

*Dorsey v. Portfolio Equities, Inc.*, 540 F.3d 333 (5th Cir. 2008) ..............................................8, 9

*Edelman v. Jordan*, 415 U.S. 651 (1974)................................................................................22

*Edionwe v. Bailey*, 860 F.3d 287 (5th Cir. 2017) ......................................................................7

*Ex parte Young*, 209 U.S. 123 (1908).........................................................................22, 23, 24

*Funk v. Stryker Corp.*, 631 F.3d 777 (5th Cir. 2011)................................................................10

*Gisclair v. Galliano Marine Servs.*, No. 05-5223,
2007 WL 1266396 (E.D.L.A. April 30, 2007) .........................................................................10

*Gomez v. Toledo*, 446 U.S. 635 (1980)...................................................................................12

Green Valley Special Utility Dist. v. City of Schertz, *969 F.3d 460 (5th Cir. 2020)* .................13

4

*Jackson v. City of Hearne, Texas*, 959 F.3d 194 (5th Cir 2020) ...................................................23

*Jingping Xu v. Univ. of Tex. M.D. Anderson Cancer Ctr.*, 595 F. App'x 341 (5th Cir. 2014) .....22

*Joseph v. Bd. of Regents of Univ. of Wis. Sys.*, 432 F.3d 746 (7th Cir. 2005)............................23

*Kentucky v. Graham*, 473 U.S. 159 (1985) ..................................................................................24

*Mathews v. Eldridge*, 424 U.S. 319 (1976) ...........................................................................13, 14

*McLin v. Ard*, 866 F.3d 682 (5th Cir. 2017) ...................................................................................7

*Memphis Light, Gas & Water Div. v. Craft*, 436 U.S. 1 (1978) ..................................................17

*Monell v. Dep't of Soc. Serv.*, 436 U.S. 658 (1978)...............................................................passim

*Monroe v. Pape*, 365 U.S. 167 (1961) .........................................................................................21

*Mullane v. Cent. Hanover Bank & Trust Co.*, 339 U.S. 306 (1950)............................................14

*Pennhurst State Sch. & Hosp v. Halderman*, 465 U.S. 89 (1984)...............................................25

*Peralta v. Dillard*, 744 F.3d 1076 (9th Cir. 2014) ......................................................................23

*Pineda v. City of Hous.*, 291 F. 3d 325 (5th Cir. 2002) ...............................................................23

*Planned Parenthood Gulf Coast, Inc. v. Kleibert*, 141 F.Supp.3d 604 (M.D. La. 2015) .............10

*Randall Wolcott, M.D. P.A. v. Sebelius*, 635 F.3d 757 (5th Cir. 2011) .........................................8

*Robinson v. Hunt Cnty., Tex.*, 921 F.3d 440 (5th Cir. 2019).......................................................23

*Scanlan v. Texas A&M Univ.*, 343 F.3d 533 (5th Cir. 2003) ..................................................10, 11

*Skinner v. Gautreaux*, No. 20-595-SDD-SDJ, 2021 WL 3057399 (M.D. La. July 20, 2021) ..8, 11

*Smith v. Bd. of Comm'rs of La. Stadium & Exposition Dist.*,
372 F. Supp. 3d 431 (E.D. La. 2019) ............................................................................................10

*Sullivan v. Leor*, 600 F.3d 542 (5th Cir. 2010)..............................................................................8

*Thompson v. City of Wako*, 764 F.3d 500 (5th Cir. 2014)............................................................11

*United States. v. Pichon*, No. 06-009, 2009 WL 1076709 (E.D. La. Apr. 16, 2009) ..................22

*Va. Off. for Prot. & Advoc. v. Stewart*, 563 U.S. 247 (2011)......................................................24

*Valentine v. Collier*, 993 F.3d 270 (5th Cir. 2021)......................................................................22

*Waller v. Hanlon*, 922 F.3d 590 (5th Cir. 2019)............................................................................7

*West v. Atkins*, 487 U.S. 42 (1988) ...................................................................................12

*Will v. Mich. Dept. of State Police*, 491 U.S. 58 (1989) .............................................21

*Williams on Behalf of J.E. v. Reeves*, 954 F.3d 729 (5th Cir. 2020).....................................11, 13

*Williston v. Eggleston*, 379 F. Supp. 2d 561 (S.D.N.Y. 2005)....................................25

## CONSTITUTIONS AND STATUTES

U.S. Const. Amend. XI ...................................................................................................11

42 U.S.C. § 1983...............................................................................................12, 21, 22

LA. STAT. ANN. § 23:1471 ..................................................................................................1

LA. STAT. ANN. § 23:1624...............................................................................................14

## REGULATIONS

20 C.F.R. § 650.4(a)...................................................................................................14, 20

20 C.F.R. § 650.4(b)...................................................................................................14, 19

20 C.F.R. § 650.3(a)...................................................................................................20

## OTHER AUTHORITIES

CONG. GLOBE, 42d Cong., 1st Sess. at 804 ......................................................................21

Dept. of Labor, Unemployment Insurance Program Letter 16-20 Change 1, April 27, 2020.......15

## RULES

5th Cir. R. 47.5.4.............................................................................................................22

Fed. R. Civ. Pro. 12(d) .....................................................................................................9

Fed. R. Evid. 201(b).........................................................................................................10

## STANDARD OF REVIEW

A motion for judgment on the pleadings, under Federal Rule of Civil Procedure 12(c), "is subject to the same standard as a motion to dismiss under Rule 12(b)(6)." *Doe v. MySpace, Inc.*, 528 F.3d 413, 418 (5th Cir. 2008). "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Edionwe v. Bailey*, 860 F.3d 287, 291 (5th Cir. 2017) (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678.

"Determining whether a complaint states a plausible claim for relief [is] . . . a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Id*. at 679. "First, [the Court] must identify the complaint's well-pleaded factual content." *Waller v. Hanlon*, 922 F.3d 590, 599 (5th Cir. 2019). The court must set aside "any unsupported legal conclusions," the truth of which it "cannot assume." *Id*.; *see also Iqbal*, 556 U.S. at 678-79. "Second, [the Court] ask[s] whether the remaining allegations 'are sufficient to nudge the [plaintiff's] claim across the 'plausibility' threshold.'" *Waller*, 922 F.3d at 599 (quoting *Iqbal*, 566 U.S. at 678). In reviewing a complaint, the Court must "'draw all inferences in favor of the nonmoving party, and view all facts and inferences in the light most favorable to the nonmoving party.'" *McLin v. Ard*, 866 F.3d 682, 688 (5th Cir. 2017) (quoting *Club Retro, L.L.C. v. Hilton*, 568 F.3d 181, 194 (5th Cir. 2009)). "[T]he complaint need not set out 'detailed factual allegations,' but something 'more than labels and conclusions, and a formulaic recitation of the

elements of a cause of action' is required." Order, ECF 48 at 8 (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007)).

## ARGUMENT

## I.    THE COURT SHOULD NOT CONSIDER THE NEW AND IRRELEVANT EVIDENCE IMPROPERLY INTRODUCED BY DEFENDANT

In her Memorandum of Law, Defendant introduces new factual information and requests the Court to take judicial notice of two documents never referenced in Plaintiffs' First Amended Complaint (hereinafter "Amended Complaint"). Such new information and documents are improperly introduced at this Rule 12(c) stage of litigation.

### A.    The Court May Not Consider Matters Outside of the Pleadings.

"In ruling on a motion to dismiss, the district court generally 'must not go outside the pleadings.'" *Sullivan v. Leor*, 600 F.3d 542, 546 (5th Cir. 2010). The Fifth Circuit defines 'pleadings' broadly, so "a court ruling on a 12(b)(6) motion may rely on the complaint, its proper attachments, 'documents incorporated into the complaint by reference, and matters of which a court may take judicial notice.'" *Randall Wolcott, M.D. P.A. v. Sebelius*, 635 F.3d 757, 763 (5th Cir. 2011) (quoting *Dorsey v. Portfolio Equities, Inc.*, 540 F.3d 333, 338 (5th Cir. 2008)). "[D]ocuments that a defendant attaches to a motion to dismiss are [also] considered part of the pleadings if they are referred to in the plaintiff's complaint and are central to her claim." *Collins v. Morgan Stanley*, 224 F.3d 496, 498-99 (5th Cir. 2000) (internal quotations omitted). In such circumstances, "the defendant merely assists the plaintiff in establishing the basis of the suit, and the court in making the elementary determination of whether a claim has been stated." *Id*. at 499.

On the other hand, "[a]t this stage, where Plaintiff[s'] allegations are taken as true," facts provided by the defendant "that tend[] to discredit [the Plaintiffs'] allegations should not be considered." *Skinner v. Gautreaux*, No. 20-595-SDD-SDJ, 2021 WL 3057399, at *2 (M.D. La.

July 20, 2021) (finding that a disciplinary report introduced by the defendants "in order to disprove Plaintiff's rendition of the facts" should not be considered even though plaintiff referenced the report in his complaint). Moreover, when ruling on a motion to dismiss, the Court "may not consider new factual allegations made outside the complaint." *Dorsey*, 540 F.3d at 338.[3]

In Defendant's Memorandum in Support, Defendant laments the allegedly "Herculean measures" Louisiana took "to meet the increased claims volume and implement brand new unemployment programs on the fly." ECF 67-1 at 1. Defendant spends two pages of her memorandum offering unsupported data not of record as purported evidence for this allegation. *Id*. at 1-3. However, on a Rule 12(c) motion, this Court may not consider this new information. *See Dorsey*, 540 F.3d at 338 ("Because the court reviews only the well-pleaded facts in the complaint, it may not consider new factual allegations made outside the complaint."). None of Defendant's new facts are referred to in the Amended Complaint.

**B.    Defendant Improperly Offered Documents for Judicial Notice.**

The Defendant also attaches two exhibits to its Motion as evidence of the number of claims Louisiana Workers Commission ("LWC") has processed between January 2019 and October 2020: the March 31, 2021 Louisiana Legislative Audit report, produced to identify improper payment of unemployment benefits and the Preliminary Report of Dr. James Richardson. *See* ECF 67-1 at 2-3. Defendant requests that the Court take "Judicial Notice" of both exhibits because they are "publicly available" and the Plaintiffs' attorneys previously

---

[3] If this court chooses to consider the facts alleged in Defendant's motion, "the motion must be treated as one for summary judgment under Rule 56." And "[a]ll parties must be given a reasonable opportunity to present all the material that is pertinent to the motion." Fed. R. Civ. Pro. 12(d). Converting this Motion into a motion for summary judgment would be premature given that this litigation is in the beginning stages and the parties have not yet engaged in discovery.

attached the Preliminary Report of Dr. James Richardson to a Petition for a Preliminary Injunction in another case. *See id.* at 2 n.1.

"A judicially noticed fact must be one not subject to reasonable dispute in that it is either (1) generally known within the territorial jurisdiction of the trial court or (2) capable of accurate and ready determination to resort to sources whose accuracy cannot reasonably be questioned." *Scanlan v. Texas A&M Univ.*, 343 F.3d 533, 537 (5th Cir. 2003) (quoting Fed. R. Evid. 201(b)). Additionally, "courts may not take judicial notice of irrelevant facts." *Gisclair v. Galliano Marine Servs.*, No. 05-5223, 2007 WL 1266396, at *1 (E.D.L.A. April 30, 2007) (refusing to take judicial notice of weather station data unless plaintiff "lays the appropriate factual foundation for the relevance of this information"); *see also Planned Parenthood Gulf Coast, Inc. v. Kleibert*, 141 F.Supp.3d 604, 645 n.34 (M.D. La. 2015) ("[T]his Court may take judicial notice of 'publicly available documents and transcripts' produced by a state or federal agency 'which were matters of public records directly relevant to the issue at hand.'") (quoting *Funk v. Stryker Corp.*, 631 F.3d 777, 783 (5th Cir. 2011)).

Neither attachment is appropriate for judicial notice. Louisiana courts have taken judicial notice of reports by the Louisiana Legislative Auditor, *see Smith v. Bd. of Comm'rs of La. Stadium & Exposition Dist.*, 372 F. Supp. 3d 431, 446 (E.D. La. 2019), however, in this case the Auditor's analysis of improper unemployment compensation payments is irrelevant to whether Plaintiffs have stated a plausible claim that Defendant failed to provide adequate and timely process in administering unemployment compensation. As for Dr. Richardson's report, it is not a "public record" but rather "a defendant-created report" that reviews the Defendant's difficulties in meeting her obligations during the pandemic. *See Scanlan*, 343 F.3d at 537. Dr. Richardson's

report is neither "generally known" within Louisiana, nor is it "capable of accurate and ready determination by resort to sources whose accuracy cannot reasonably be questioned." *Id*.

The facts provided in Defendant's attachments, like the other facts newly alleged in Defendant's Memorandum, are especially inappropriate for the Court to consider at this Rule 12(c) stage because Defendant introduced them in order to "discredit" the Plaintiffs' allegations. *See Skinner*, 2021 WL 3057399, at *2. Defendant's introduction of these new facts asks the Court to prematurely "weigh the [] Defendants' rendition of what occurred against the Plaintiff[s]'." *Id*. On a Rule 12(c) motion, the Court's "task . . . is to determine whether the plaintiff stated a legally cognizable claim that is plausible, not to evaluate the plaintiff's likelihood of success." *Thompson v. City of Wako*, 764 F.3d 500, 503 (5th Cir. 2014).

Defendant cannot introduce new factual allegations and documents in support of a Rule 12(c) motion. For the purposes of resolving this Motion, the Court should disregard Defendant's attempt to do so.

## II.    THIS COURT HAS JURISDICTION OVER PLAINTIFFS' CLAIMS UNDER THE *EX PARTE YOUNG* DOCTRINE.

The Eleventh Amendment to the Constitution of the United States bars suits in federal court against a state or its agencies by its own citizens, citizens of other states, or foreign nations. U.S. Const. Amend. XI. The Louisiana Workers "Commission is considered to be an arm of the state for the purposes of Eleventh Amendment Immunity." ECF 48 at 5. "However, under the *Ex Parte Young* doctrine, a 'litigant may sue a state official in his official capacity if the suit seeks prospective relief to redress an ongoing violation of federal law.'" *Id*. (quoting *Williams on Behalf of J.E. v. Reeves*, 954 F.3d 729, 735-36 (5th Cir. 2020)). "For a suit to proceed under this doctrine, it must be a suit seeking declaratory or injunctive relief and: (1) be brought against state

officers who are acting in their official capacities; (2) seek prospective relief to redress ongoing

conduct; and (3) allege a violation of federal, not state law." *Id* (internal quotations omitted).

Defendant concedes that this Court has already "found that it had jurisdiction over

Plaintiffs' claims to the extent that they seek prospective relief for ongoing violations of federal

law." ECF 67-1 at 7.

## III.    PLAINTIFFS HAVE STATED A CLAIM UPON WHICH RELIEF CAN BE GRANTED UNDER 42 U.S.C. § 1983.

### A.    <u>Plaintiffs Properly Allege that they Suffered a Violation of their Federal Rights Under Color of State Law.</u>

To state a claim under 42 USC § 1983, a plaintiff "must allege the violation of a

right secured by the Constitution and laws of the United States, and must show that the alleged

deprivation was committed by a person acting under color of state law." *West v. Atkins*, 487 U.S.

42, 48 (1988); *see also Gomez v. Toledo*, 446 U.S. 635, 640 (1980) ("two—and only two—

allegations are required in order to state a cause of action under that statute. First, the plaintiff

must allege that some person has deprived him of a federal right. Second, he must allege that the

person who has deprived him of that right acted under color of state or territorial law").

Defendant, the Secretary of the LWC, administers Louisiana's unemployment

compensation system and, in that role, she must ensure that LWC complies with all relevant

federal laws and obligations. First Am. Compl., ECF 45-1 ¶ 29. Defendant does not dispute that

she acted under color of state law, and this Court has already acknowledged that Defendant is a

"person" for the purposes of § 1983. *See* ECF 48 at 8-10. Plaintiffs sue Defendant in her official

capacity for prospective injunctive relief for causing Plaintiffs' ongoing harm. [4] This leaves only the first question—whether Plaintiffs have alleged that Defendant has deprived them of a federal right. In this case, the relevant rights derive from the procedural due process clause of the Fourteenth Amendment and the "when due" clause of the Social Security Act.

### 1.    Plaintiffs Have Stated Sufficient Facts to Support their Procedural Due Process Claims.

In determining whether a procedural due process violation has occurred, courts first ask if a property interest entitled to due process protection has been violated. *Cuellar v. Tex. Emp. Comm'n*, 825 F.2d 930, 935 (1987) (quoting *Brock v. Roadway Express, Inc.*, 481 U.S. 252, 260 (1987)). Next, courts ask what process is due and whether it is constitutionally sufficient. *Id.*

Here, there is no question that Plaintiffs have alleged a constitutionally protected property interest in unemployment compensation. Courts have held on numerous occasions that there is a property interest in unemployment benefits, *id.* at 935 (collecting cases), and Plaintiffs have included in the Amended Complaint allegations to this effect.

Plaintiffs have also sufficiently alleged that Defendant has failed to provide the constitutionally required process due to them and the putative class they represent. "(D)ue process is flexible and calls for such procedural protections as the particular situation demands." *Mathews v. Eldridge*, 424 U.S. 319, 335 (1976). "Many controversies have raged about the cryptic and abstract words of the Due Process Clause but there can be no doubt that at a

---

[4] Defendant argues that "Plaintiffs' Amended Complaint is void of *factual* allegations describing ongoing or future violations by the LWC or Secretary Cates." ECF 67-1 at 9 (emphasis in original). However, Plaintiffs allege numerous facts demonstrating that Defendant Secretary Cates, oversees the States' unemployment compensation system, which fails to provide Plaintiffs with timely and adequate processing of benefits, notice, and opportunity to be heard. Defendant has not changed her practices, which continue to result in "Plaintiffs' inability to pay for necessary expenses, such as rent; mortgages; basic utilities; and food." ECF 45-1 at ¶ 62. *See Green Valley Special Utility Dist. v. City of Schertz*, 969 F.3d 460, 471-72 (5th Cir. 2020) (quoting *Reeves*, 954 F.3d at 738) ("'But, '[a]s long as the claim seeks prospective relief for ongoing harm, the fact that a current violation can be traced to a past action does not bar relief under . . . *Young*.'").

minimum they require that deprivation of life, liberty or property . . . be preceded by notice and opportunity for hearing appropriate to the nature of the case." *Mullane v. Cent. Hanover Bank & Trust Co.*, 339 U.S. 306, 313 (1950). "The fundamental requirement of due process is the opportunity to be heard at a meaningful time and in a meaningful manner." *Mathews*, 424 U.S. at 333 (internal quotations omitted).

Louisiana maintains a state unemployment compensation system, administered by the LWC under the oversight of Defendant Cates. ECF 45-1 ¶ 29. The Defendant, in her role as the Secretary of the LWC, must ensure compliance with all relevant federal laws and obligations, *id.*, including the federal and State laws that require the timely and proper processing of unemployment compensation, *see* LA. STAT. ANN. § 23:1624, and timely and adequate notice and opportunity to be heard, *see* 20 C.F.R. § 650.4(a), (b). Since March 13, 2020, Defendant has administered Louisiana's unemployment compensation system in such a way that it fails to provide adequate and timely processing of benefits, notice, and opportunities to be heard. Louisianans who have been, are being, or will be denied access to unemployment compensation are thus denied their constitutional rights to due process as guaranteed by the Fourteenth Amendment.

i.    **Plaintiffs have alleged facts in support of their claims that Defendant fails to process unemployment compensation in an adequate and timely manner.**

In the Amended Complaint, Plaintiffs demonstrate four ways that Defendant routinely fails to adequately and timely process unemployment compensation. First, Defendant routinely fails to process first-time unemployment compensation. "[S]ome members of the putative class have submitted applications for benefits, but have yet to receive an issuance of benefits for which they are eligible." ECF 45-1 at ¶ 43. For example, at the time of filing, Named Plaintiff Plaisance

had not received a single benefit payment over a year after she filed her claim, despite multiple conversations with the LWC and filing new claims per their instructions. *See id.* ¶ 65-66.

Second, Defendant routinely fails to process extended unemployment compensation, for which Louisianans who exhaust their initial claims may reapply. Putative class members have applied and "been approved for Extended Benefits;" however, they "have yet to receive these extended UC benefits" from LWC. *Id.* ¶ 42. Third, the Amended Complaint alleges that the Defendant routinely processes unemployment compensation without including the calculation of backpay as required by the Department of Labor. *Id.* at 14, n. 18; *see* Dept. of Labor, Unemployment Insurance Program Letter 16-20 Change 1, April 27, 2020, https://wdr.doleta.gov/directives/attach/UIPL/UIPL_16-20_Change_1.pdf. For example, Named Plaintiff Coleman submitted her claim for unemployment compensation on or around May 2020. She qualified for unemployment compensation; however, she "did not receive the backpay from the time of separation from employment through the date of submission of her initial claim." ECF 45-1 at ¶ 85.

Finally, the Amended Complaint alleges that the Defendant routinely does not process adjusted payments for Louisianans who have managed to find part-time work. Instead, putative class members who "have been able to resume employment, albeit in a limited and part-time basis . . . have been disqualified or have not received payment, due to LWC's error." *Id.* ¶ 41

ii.   **Plaintiffs have alleged facts in support of their claims that Defendant has deprived them of adequate and timely notice.**

The Amended Complaint portrays Louisianans as stuck with an unreachable agency that fails to process their unemployment compensation claims or provide them with adequate notice on those claims. The Amended Complaint alleges that "LWC's online portal reflects incorrect information" and it is "often inaccessible or the server crashes." ECF 45-1 at ¶ 39. "[C]laimants

15

wait on hold for hours, only to be disconnected by the inadequate telephone system, without ever having been able to speak to a representative." *Id.* Plaintiffs are left with no benefits, no notice, and no one to call.

The Amended Complaint depicts how Louisiana's unemployment compensation system, overseen by Defendant, fails to provide Plaintiffs with timely and adequate notice. The Amended Complaint alleges that in some cases, Defendant "entirely fails to provide any notice when terminating a person's unemployment benefits." *Id.* ¶ 44. For example, at the time of filing, Named Plaintiff Stephen Strick had been without benefits for months after informally resolving an overpayment determination, and he has received no notice regarding this deprivation of benefits. *Id.* ¶¶ 99-105. Defendant also often fails to provide notice to individuals awaiting an initial decision on their unemployment compensation eligibility: "[c]laimants may wait months, or even a year as in the case of Named Plaintiff Plaisance, without any notice regarding the outcome of their claim." *Id.* ¶ 45.

Even when Defendant does provide notice, she fails to provide notice before terminating unemployment compensation. The Amended Complaint alleges that "Defendant provides notice of the termination contemporaneous to or after termination." *Id.* ¶ 121. Proper notice contains information on how to request a hearing to challenge such terminations; without this crucial information, claimants are unable to seek administrative review until after their benefits are terminated. *See id.* Moreover, severe delays in administrative appeals, *see infra* Section III(1)(ii), leave claimants without process or the ability to meet their basic expenses for several months.

Even post-termination, the Amended Complaint alleges that Defendant "regularly fails to provide notice containing details of the termination sufficient to allow the claimant to prepare a defense when facing disqualifications" from unemployment compensation. ECF 45-1 at ¶ 50; *see*

*also Memphis Light, Gas & Water Div. v. Craft*, 436 U.S. 1, 14 (1978) ("The purpose of notice under the Due Process Clause is to appraise the affected individual of, and permit adequate preparation for, an impending hearing.").

The Amended Complaint alleges that Defendant "utilizes standardized template notices to inform claimants that they are being disqualified from receiving unemployment benefits." ECF 45-1 at ¶ 49. The templates "include blank fields" for Defendant "to identify the reason for the disqualification, the effective date of the disqualification, and the date by which an appeal must be postmarked." *Id*. However, notices issued by Defendant "routinely fail to inform claimants of the definite, certain, and specific disqualifying cause." *Id*. ¶ 51.

Instead, "written notices from LWC routinely include statements that claimants could appeal the determination within fifteen (15) days and fail to identify the reason for the adverse agency action with sufficient specificity for the claimant to raise a challenge." *Id*. ¶ 55. "[M]any notices provide no reason whatsoever for the . . . termination and merely state tautologically that the claimant is denied benefits because they do not meet the statutory requirements for receiving benefits." *Id*. ¶ 52. For example, notices state, "your claim is DENIED as you do not meet the qualifications laid out in the Coronavirus Aid, Relief, and Economic Security (CARES) Act of 2020 for Pandemic Unemployment Assistance." *Id.* ¶ 52 (quoting Ex. A). No additional details are given "about which requirements have not been met and why." *Id.* Moreover, the Amended Complaint alleges that claimants are "afforded no information on how to request a hearing or challenge the denial or loss of benefits they experience." *Id*. ¶ 46.

### iii.    Plaintiffs have alleged facts in support of their claims that Defendant has deprived them of adequate and timely opportunity to be heard.

The Amended Complaint also establishes that Defendant fails to provide Plaintiffs with an opportunity to be heard at a meaningful time and in a meaningful manner, both before and after denial or termination of benefits. The Amended Complaint alleges that Defendant's failure to adequately process unemployment compensation claims deprives Plaintiffs an opportunity to be heard. For example, Named Plaintiff Plaisance "is unable to administratively appeal the LWC's failure to pay weekly benefits where the status for those weekly claims reflects that they are processing." *Id.* ¶ 68. An individual in the situation of Plaintiff Plaisance can wait for months with no issuance of benefits to which they are entitled and no opportunity for an appeal hearing. Similarly, the Amended Complaint alleges that Defendant fails to provide Plaintiffs with an opportunity to be heard in a meaningful manner by failing to provide adequate and timely notice. Defendant's failure to provide adequate notice "robs claimants of the information critical to protecting their unemployment benefits. As a result, claimants are denied the opportunity to prepare a defense, gather evidence and contact potential witnesses, and present these" to Defendant. *Id.* ¶ 54. For example, Named Plaintiff Plaisance is also unable to appeal the claims for which she has been disqualified, because she "has not been provided any notice stating the reasons for disqualification." *Id.* ¶ 68.

In addition, the Amended Complaint alleges that in the rare circumstance when Louisianans are able to overcome the inadequate processing of benefits and inadequate notice, administrative appeals are untimely, delayed, and unavailable. The Amended Complaint alleges that because Defendant fails to provide pre-termination notice, *see supra* Section III(1)(ii), "claimants are not able to seek administrative review and request a hearing until after the

benefits are terminated and they are deprived of income." ECF 45-1 ¶ 121. The Amended

Complaint further alleges that claimants "are unable to submit appeals online, due to the LWC's

failure to update and maintain its computer systems." *Id*. ¶ 56; *see also id*. ¶ 39. For example,

Named Plaintiffs Frederick Bass "is unable to access the online system" necessary for appealing

his unemployment compensation claim. *Id*. ¶ 77. Additionally, "[o]n one occasion he was on

hold for seven (7) hours" and the call was "disconnected before he was able to speak with a

representative." *Id*. ¶ 78.

Moreover, the Amended Complaint alleges that Defendant "typically takes many months

to hear and decide upon an appeal." *Id*. ¶ 141; *see also id*. ¶ 57 ("Some putative class members

who were able to contact the LWC to seek administrative appeal after receiving notice of an

adverse determination were informed by agency employees that the LWC will not even consider

the administrative appeals for at least four months."). For example, Named Plaintiff Amanda

Coleman has been waiting months for an opportunity to appeal alleged unemployment

compensation overpayments after being told in February 2021 that "an appeal hearing will be

scheduled within the near future." *Id*. ¶ 89; *see also id*. ¶¶ 70-72, 75-79, 82, 85-94.

This processing time grossly exceeds that recommended by the federal Department of

Labor. *See id*. ¶ 58 ("Guidance from the federal Department of Labor ("DOL") identifies that the

benefits-administering agency will comply substantially with the requirement to provide

administrative appeals when due if the State has issued at least 60 percent of all first level benefit

appeal decisions within 30 days of the date of appeal, and at least 80 percent of all first level

benefit appeal decisions within 45 days.") (citing 20 C.F.R. § 650.4(b)). Cumulative data from

the DOL indicate that during the period from March 2020 through March 2021, there were

33,717 lower level administrative appeal requests, but only 19,280 were decided; this is an

approximately 57% completion rate over the course of a year. *See id.* ¶ 59 (citing Ex. B).

Additional data from the Department of Labor indicates that "in the first three months of 2021,

less than 3% of claimants requesting administrative appeals in a given month were able to obtain

one within the 30 days. The 45-day rate was not improved." *Id*. ¶ 60 (citing Ex. C).

### 2. Plaintiffs Have Stated Sufficient Facts to Support their "When Due" Claim

Defendant does not specifically address Plaintiffs' Fifth Claim for Relief; however,

because Defendant quotes language from the Fifth Claim in her motion, ECF 67 at 1

("'Defendants have a custom, policy, pattern and practice of failing to determine appeals with

'the greatest promptness that is administratively feasible,'"), Plaintiffs address the sufficiency of

the Fifth Claim pleading. For the purposes of Plaintiffs' Fifth Claim, the relevant "violation of a

right" is Defendant's failure to comply with the requirements of the when due clause of the

Social Security Act, which include the issuance of benefits "with the greatest promptness that is

administratively feasible," 20 C.F.R. §§ 650.3(a)(1)-(2), 650.4(a), and providing a pre-

termination notice and an opportunity to be heard when benefits are terminated. *Cal. Dep't of

Human Res. Dev. v. Java*, 402 U.S. 121 (1971).

Plaintiffs have included in the Amended Complaint allegations sufficient to support their

"When Due" Claim. *See supra* Section III(1)(i)-(iii.).

### B. *Monell* Does Not Apply to Claims Brought Against A State Official in her Official Capacity for Prospective Injunctive Relief.

In her Memorandum of Law, Defendant cites to *Monell v. Dep't of Soc. Serv.*, 436 U.S.

658 (1978), and its progeny. ECF 67 at 7-8. In *Monell*, the Supreme Court held that in order to

state a § 1983 claim against a municipal defendant, the constitutional violation in question must

"implemen[t] or execut[e] a policy statement, ordinance, regulation, or decision officially

adopted and promulgated by [the municipality's] officers." *Id.* at 690. But *Monell* does not apply to claims against state officials sued in their official capacity for prospective injunctive relief.

Prior to the Supreme Court's decision in *Monell*, municipal defendants sued under § 1983 were seen as "mere instrumentalit[ies] for the administration of state law," *Monroe v. Pape*, 365 U.S. 167, 190 (1961) (quoting CONG. GLOBE, 42d Cong., 1st Sess. at 804), and received the same constitutional protections from liability in federal court as state governments. *Id. Monell* constituted a fundamental departure in jurisprudence under §1983. Under *Monell*, municipalities were newly deemed "persons" under § 1983, subjecting municipal defendants for the first time to claims for monetary and injunctive relief. *Monell*, 436 at 690. But, because the Court found that Congress did not intend to impose *respondeat superior* liability upon municipal governments, municipalities can only be held liable for violations of federal rights if the violation derives from a custom, policy, or practice of the municipal government. *Id.* at 694. Since *Monell*, courts have set forth a variety of tests for the purpose of establishing that the custom, "policy statement, ordinance, regulation, or decision officially adopted and promulgated by that body's officers" required for municipal liability exists. *Id.* at 690; *see, e.g. City of Canton, Ohio v. Harris*, 489 U.S. 378, 380 (1989) (holding that under certain circumstances, a municipality can be held liable for failure to train employees); *Bd. of Cnty. Comm'rs of Bryan Cnty., Okl, v. Brown*, 520 U.S. 397, 410-11 (1997) (discussing circumstances under which a municipality might be held liable for deliberately indifferent hiring).

Conversely, it is a long-held principle that states are not "persons" for the purposes of 42 U.S.C. § 1983, because "Congress, in passing § 1983, had no intention to disturb the States' Eleventh Amendment immunity." *Will v. Mich. Dept. of State Police*, 491 U.S. 58, 66 (1989). It then follows that, generally speaking, state officials sued in their official capacity are also not

"persons;" a claim against a state official in an official capacity is tantamount to a claim against the state itself because monetary damages in such cases come from the state treasury. *See Edelman v. Jordan*, 415 U.S. 651, 675-77 (1974). However, as this Court held in its decision on Defendant's Motion to Dismiss, an express and long-standing exception exists for claims seeking prospective injunctive relief against a state official sued in their official capacity—in these circumstances, the state official sued in an official capacity is a "person" for the purposes of 42 U.S.C. § 1983. *See* ECF 48 at 10 ("because Secretary Dejoie is sued only in her official capacity, and only for prospective relief, she may properly be sued under § 1983 because 'official capacity actions for prospective relief are not treated as actions against the state'") (quoting *Valentine v. Collier*, 993 F.3d 270, 282 (5th Cir. 2021)); *see also Ex parte Young*, 209 U.S. 123, 159-60 (1908).

In order to support her improper importation of the *Monell* liability standard to this case against a state official in her official capacity, Defendant relies on *Jingping Xu v. Univ. of Tex. M.D. Anderson Cancer Ctr.*, 595 F. App'x 341, 344 (5th Cir. 2014). In *Xu*, an unreported decision,[5] the Fifth Circuit applied to a state entity a formulation of the *Monell* liability standard from *Bellard v. Gautreaux*, a municipal liability case. *Xu*, 595 F. App'x at 344 ("UT…could be held liable under § 1983 if '(1) there is a constitutional violation; (2) an official policy or custom; and (3) a showing that the official policy or custom was the operational force behind the constitutional violation.'") (quoting *Bellard*, 675 F.3d 454, 462 (5th Cir.2012).) In doing so, the court took *Bellard* out of context. The full quote from *Bellard* reads "Municipalities may be held liable under § 1983 for constitutional violations if: (1) there is a constitutional violation; (2) an

---

[5] Under Fifth Circuit Rule 47.5.3, unpublished opinions issued on or after January 1, 1996 may be cited, but are not precedent. 5th Cir. R. 47.5.4; *see also Ballard v. Burton*, 444 F.3d 391, 401 n. 7 (5th Cir. 2006); *United States. v. Pichon*, No. 06-009, 2009 WL 1076709, at *1 (E.D. La. Apr. 16, 2009) ("However, under Fifth Circuit Rules 47.5.4 unpublished opinions lack precedential value.").

official policy or custom; and (3) a showing that the official policy or custom was the operational force behind the constitutional violation." *Bellard*, 675 at 462 (citing *Monell*, 436 U.S. 658). No court has subsequently adopted *Xu*'s wholesale importation of the *Monell* liability standard into analysis of official capacity claims seeking prospective injunctive relief against a state official under *Ex Parte Young*, nor is it appropriate here.

Numerous published decisions from the Fifth Circuit make clear that *Monell* is the appropriate standard for establishing municipal liability, specifically. *See e.g. Jackson v. City of Hearne, Texas*, 959 F.3d 194, 204 (5th Cir 2020) ("municipalities face § 1983 liability 'when execution of a government's policy or custom . . . inflicts the injury'") (quoting *Monell*, 436 at 694); *Robinson v. Hunt Cnty., Tex.*, 921 F.3d 440, 447 (5th Cir. 2019) ("To state a claim for municipal liability under 42 U.S.C. § 1983, a plaintiff must allege '(1) an official policy (or custom), of which (2) a policy maker can be charged with actual or constructive knowledge, and (3) a constitutional violation whose 'moving force' is that policy (or custom).'") (quoting *Pineda v. City of Hous.*, 291 F. 3d 325, 328 (5th Cir. 2002)); *Cherry Knoll, L.L.C. v. Jones*, 922 F.3d 309, 316-17 (5th Cir. 2019); *Bellard*, 475 at 462. Indeed, various Circuit Courts, including the Fifth, have declined to extend the pleading standards established by *Monell* and its progeny to states, because states are protected by the Eleventh Amendment. *See e.g. Peralta v. Dillard*, 744 F.3d 1076, 1084-85 (9th Cir. 2014) (declining to extend *Monell* claims to states, because states "are protected by the Eleventh Amendment"); *Joseph v. Bd. of Regents of Univ. of Wis. Sys.*, 432 F.3d 746, 748-49 (7th Cir. 2005) ("The Court has been clear...the *Monell*'s holding applies only to municipalities and not states"); *Bogard v. Cook*, 586 F.2d 399, 410 (5th Cir. 1978) ("The Supreme Court explicitly noted that its *Monell* holding was 'limited to local government units which are not considered part of the state for eleventh amendment purposes'") (quoting *Monell*,

436 at 690 n.54). The proper standard is the one Plaintiffs articulated above in Section III(A). Defendant's reliance on *Xu* to create a new standard of § 1983 liability is unwarranted.

Defendant further muddies the jurisprudential waters by citing language from *Kentucky v. Graham*, 473 U.S. 159, 166 (1985), which draws upon *Monell* and likewise does not apply to Plaintiffs' claims. *Graham* concerned a suit for money damages against a state actor, which led the Court to differentiate between damages suits against a government official in his personal vs. official capacity. *Id.* at 166-67. The Court discussed *Monell*'s application to damages claims against county and municipal actors in their official capacity. *Id.* at 166. But the Court did not apply *Monell* to claims against state officials; as discussed, the Eleventh Amendment prohibits damages claims against state actors in their official capacities. *Id.* at 167.

The standards discussed in *Graham* do not govern suits for injunctive relief against state officials, because "when a federal court commands a state official to do nothing more than refrain from violating federal law, he is not the State for sovereign-immunity purposes." *Va. Off. for Prot. & Advoc. v. Stewart*, 563 U.S. 247, 254-55 (2011); *Ex Parte Young*, 209 U.S. at 159-60. Here, Plaintiffs bring claims against Secretary Cates, in her official capacity, seeking prospective injunctive relief to timely process unemployment claims and appeals and issue timely and adequate notices, as required by the Due Process Clause. Defendant's references to the *Monell* paradigm are wholly irrelevant to Plaintiffs' claims. The *Monell* framework does not apply to state officials sued in their official capacity for prospective injunctive relief, such as Defendant, and this Court should evaluate the sufficiency of Plaintiffs' pleadings using the correct standard outlined in section III(A) of this brief.

## IV.    PLAINTIFFS ACKNOWLEDGE THAT THE STATE LAW CLAIMS CANNOT BE MAINTAINED.

Plaintiffs acknowledge that those claims set forth in the Amended Complaint seeking to enforce rights established in state law are not actionable in federal court under 42 U.S.C. § 1983 against the Defendant in her official capacity, consistent with the holding in *Pennhurst State Sch. & Hosp v. Halderman*, 465 U.S. 89 (1984). These state law claims are a vestige of an earlier phase of the litigation against prior defendants who had not yet been excluded from the case, as the Amended Complaint was filed prior to the resolution of the Defendant's first Motion to Dismiss. See ECF 45, 46, and 48 respectively.[6]

## CONCLUSION

Plaintiffs have stated claims upon which relief can be granted. Defendant's Motion for Judgment on the Pleadings should be denied.

Dated: October 15, 2021

Respectfully submitted,

/s/ *Saima A. Akhtar*

| | |
|---|---|
| Saima A. Akhtar (NY Bar Roll No. 4661237) | Wendy Manard (Bar Roll No. 29622) |
| National Center for Law and Economic Justice | Ellyn J. Clevenger (Bar Roll No. 32395) |
| 275 Seventh Ave, Suite 1506 | The Maynard Firm |
| New York, NY 10001 | 1100 Poydras Street, Suite 2610 |
| (212) 633-6860 | New Orleans, Louisiana 70163 |
| akhtar@nclej.org | wendy@wmanard.com |
| | ellyn@wmanard.com |

ATTORNEYS FOR PLAINTIFFS

---

[6] Plaintiffs note that, while Sovereign Immunity prevents enforcement of rights established under state law against a state actor in federal court pursuant to 42 U.S.C. § 1983, it does not prevent a federal court from taking notice of and relying on the standards articulated and established by a State's own Legislature as to the appropriate level of procedural protections due in the operation of a benefit program. *See Williston v. Eggleston*, 379 F. Supp. 2d 561 (S.D.N.Y. 2005) (considering state food stamp processing standards on motion to dismiss claim brought to enforce the federal food stamp act under § 1983 and finding plaintiff suffered injury).

## **CERTIFICATE OF SERVICE**

I hereby certify that a true and correct copy of the foregoing document was filed and served upon

on all parties via CM/ECF on this 15th day of October, 2021.

/s/ *Saima A. Akhtar*
Saima A. Akhtar